Marvin B. DURNING and Jean C. Durning, husband and wife, on behalf of themselves and all other persons similarly situated, Plaintiffs,

v.

The FIRST BOSTON CORPORATION; Citibank, N.A.; First Interstate Bank of Casper, N.A.; Wyoming Community Development Authority, Defendants.

No. C85–1328D.

United States District Court,
W.D. Washington,
Seattle Division.

Jan. 7, 1986.

Dexter A. Washburn, Schweppe, Krug & Tausend, P.S., Seattle, Wash., for plaintiffs.

Bennet A. McConaughy, Paul L. Ahern, Jr., Douglas C. Ross, Roberts & Shefelman, Seattle, Wash., for all defendants except First Boston.

Hugh F. Bangasser, Preston, Thorgrimson, Ellis & Holman, Seattle, Wash., for defendant First Boston.

## MEMORANDUM AND ORDER

DIMMICK, District Judge.

Defendants move to dismiss under Fed. R.Civ.P. 12(b)(6). They argue that a document attached to the complaint shows that plaintiffs have failed to state a claim upon which relief can be granted. The Court agrees and accordingly dismisses this cause of action.[1]

This securities fraud lawsuit arises out of the sale of a $75,000,000 issue of tax-exempt single family mortgage revenue bonds by the Wyoming Community Development Authority ("Authority"). First Interstate Bank of Casper is the trustee for the bond issue. Citibank is the paying agent. First Boston Corporation is the lead underwriter for the syndicate which marketed the bonds.

The Authority was created to provide financing for the construction of housing. In 1978, the Authority initiated the single family mortgage purchase program to enable many otherwise ineligible borrowers to obtain mortgage loan financing. The 1981 bond issue was part of that program.

The Authority was authorized to use the bond proceeds to purchase certain qualifying mortgage loans on residential real property from financial institutions. The home purchasers paid an interest rate of 13 percent for 20-year mortgages. The Authority used the homeowners' monthly mortgage payments to make interest payments to its bondholders.

In 1981, plaintiffs Marvin and Jean Durning purchased four bonds in the principal amount of $5,000 each. The bonds were offered and sold to the public pursuant to a disclosure document known as the Official Statement. Plaintiffs allege that the Official Statement was misleading because it did not inform investors that the bonds were redeemable prior to 1991. In June 1985, one of the Durnings' bonds was recalled for redemption. The Durnings allege that this resulted in the termination of interest payments of more than $4,000

---

1. Because of the Court's ruling on the 12(b)(6) motion, all other motions pending in this case are moot.

through 1991. The Durnings also allege that the value of the bonds in the secondary trading market dropped immediately after the June 1985 call from 119.74 to 104.00 (100 = par).

The Durnings brought this action against the four named defendants. The Durnings moved to have this action certified as a class action on behalf of those who purchased bonds prior to the 1985 call. The Durnings assert claims under federal and state securities laws, common-law negligent misrepresentation, breach of contract, tortious breach of the covenant of good faith and fair dealing, breach of fiduciary duty, unjust enrichment, and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. All four defendants move to dismiss under Fed.R.Civ.P. 12(b)(6).

A motion to dismiss will not be granted unless it appears to a certainty that the plaintiff would not be entitled to relief under any facts that could be proved. *Halet v. Wend Investment Co.*, 672 F.2d 1305 (9th Cir.1982). A plaintiff's complaint will be liberally construed in his favor with the alleged facts generally accepted as true. *Rosen v. Walters*, 719 F.2d 1422 (9th Cir. 1983).

Plaintiffs' complaint alleges that they were mislead when buying the bonds because the Official Statement did not disclose that the bonds were redeemable before June 1, 1991. Accepting this factual assertion as being true, plaintiffs have a valid claim against the defendants.

■ The defendants, however, contend that plaintiffs' allegations are refuted by the Official Statement which is attached to the complaint. When the allegations of the complaint are refuted by an attached document, the Court need not accept the allegations as being true. *See Ott v. Home*

Savings & Loan Ass'n, 265 F.2d 643, 646 n. 1 (9th Cir.1958); *Interstate Natural Gas Co. v. Southern California Gas Co.*, 209 F.2d 380, 384 (9th Cir.1953). *See also* 5 C. Wright & A. Miller § 1357, nos. 84–86 (1969) and accompanying text. Thus, if the Court finds that the Official Statement explains that the bonds were recallable at any time after their issuance, then this cause of action must be dismissed.[2]

■ On the first page of the Official Statement, in the first paragraph, a sentence reads:

> The Bonds will be subject to redemption prior to maturity as more fully set forth herein, including mandatory redemption at par from unexpended proceeds, prepayments and certain revenues.

This sentence immediately puts the investors on notice that the bonds are subject to redemption—including mandatory redemption.

On pages 13–14 of the Official Statement, the investor is informed of three types of redemption: (1) sinking fund redemption, (2) mandatory redemption at par, and (3) optional redemption. The sinking fund and optional redemption provisions clearly set forth when the bonds can be redeemed. There is no dispute concerning these types of redemptions. Instead, the dispute involves the mandatory redemption at par provision which provides:

> The Bonds will be subject to mandatory redemption at a redemption price equal to 100% of the principal amount of the Bonds to be redeemed, plus interest accrued to the redemption date, from amounts on deposit in the Mandatory Redemption Account representing (i) Bond proceeds deposited in the Program Fund and remaining unexpended on May 1, 1983, (ii) Prepayments of Mortgage Loans, (iii) amounts withdrawn from the Bond Reserve Fund as the result of the

2. At oral argument counsel for defendants informed the Court that the Authority recalled $28 million worth of bonds in 1983—seven times the amount recalled in 1985. No litigation arose out of that redemption and no other litigation has been instituted involving the 1985 redemption.

reduction of the Bond Reserve Requirement and (iv) excess revenues, subject to the Authority's right, under certain conditions, to withdraw from the lien of the Indenture investment earnings on amounts on deposit in the Special Reserve Fund.

On page 16, the Official Statement warns investors that the Authority is unable to predict when redemption would occur:

> Due to the many factors which influence economic and financial market conditions, the Authority is not able to predict with any significant degree of reliability the expected level of prepayments it will actually receive on the Mortgage Loans. To the extent that prepayments occur, the Authority is required by the Indenture to apply amounts received to the redemption of Bonds.

These three sections, taken together, unambiguously inform the investor that mandatory redemption may take place any time the mandatory redemption account has sufficient funds.[3]

An analagous case is *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97 (5th Cir.1974). There, the plaintiff filed a class action suit alleging that a prospectus misrepresented the fact that the bonds it had purchased were recallable. Plaintiff had appended a copy of the prospectus to the complaint. The court upheld the trial court's decision granting defendant's motion to dismiss under Rule 12(b)(6). The court found the prospectus, taken as a whole, showed that the bonds could be redeemed at any time.

■ The Durnings argue that *Associated Builders* is inapposite because the prospectus in that case used the phrase "at any time" in describing when the bonds could be recalled. The Durnings assert that while the Authority has used the phrase "at any time" in previous and subsequent offerings, the phrase was not used in this offering. The Durnings have also presented to this Court, as an attachment to their brief, a xeroxed copy of part of *Moody's Municipal & Government Manual. Moody's,* in describing the 1981 series A bonds, states that the bond were not callable before June 1, 1991. These two contentions pose a problem. Generally, a court will only consider the complaint and any attached exhibits when deciding a 12(b)(6) motion. *See* 5 C. Wright & A. Miller, Federal Practice & Procedure §§ 1356, 1357 (1969). Thus, the Court normally would not consider this information. However, in view of the fact that a motion to dismiss for failure to state a claim should only be granted when defendant can show that under no set of facts can plaintiff prevail, the Court will consider this information.

■ First, the Authority's use of the phrase "at any time" in previous bond issues is irrelevant. Whether the Official Statement could have been written in a clearer, more explicit, fashion is not for this Court to decide. The only relevant issue before this Court is, looking only at the Official Statement, whether it informs the investor that the bonds were redeemable at any time. For the reasons stated

---

**3.** When the mandatory redemption account will have sufficient funds is impossible to predict because when the bonds are issued, the Authority cannot predict the amount of bond proceeds that will be used to purchase mortgages. The demand for the proceeds depends upon the demand for mortgages, which in turn depends upon the demand for single family housing. Moreover, mortgage interest rates fluctuate. Should mortgage interest rates fall below the 13-percent rate required to be charged pursuant to the bond issue to secure the issue's creditworthiness, at least two consequences are likely to occur: (1) homebuyers are likely to seek mortgage financing from other sources because they can obtain a mortgage elsewhere at a lower rate, and (2) homeowners will prepay and refinance the mortgages backed by the Authority.

If this occurs, the Authority must have the ability to reduce the number of outstanding bonds because it will not be able to generate sufficient funds from remaining mortgage payments to meet debt service obligations. The right to redeem the bonds under these circumstances makes the program economically sound and default less likely.

earlier, the Court finds that the Official Statement so informs the investor.

 Second, *Moody's* interpretation of the Official Statement is irrelevant. Because the Official Statement is clear on its face that the bonds were redeemable at any time that mandatory redemption funds were sufficient, it is irrelevant that *Moody's* misinterpreted the Official Statement.[4] Moreover, the Official Statement itself, on the table of contents' page, states that

[n]o dealer, broker, salesman or other person has been authorized by the Wyoming Community Development Authority or the underwriters to give any information or to make any representations, other than as contained in this Official Statement. If given or made, such other information or representations must not be relied upon as having been authorized by any of the foregoing.

Thus, investors were warned that third-party representations concerning the bond issue may not be accurate.

Because the Court finds, as a matter of law, that the Official Statement is not ambiguous and that it informs investors that the bonds were redeemable when the mandatory redemption account has sufficient funds, the plaintiffs have failed to state a claim for which relief can be granted.

THEREFORE, this cause of action is DISMISSED.

---

**4.** It is interesting to note that *Moody's* made another mistake in describing the 1981 Series A bond offering. It states that, beginning in 1982, the bonds could be recalled at 102½. The Official Statement is clear, however, that under the mandatory redemption provision, the bonds would be redeemed at par value (par = 100).