Marvin B. DURNING and Jean C. Durning, husband and wife, on behalf of themselves and all persons similarly situated, Plaintiffs-Appellants,

v.

The FIRST BOSTON CORPORATION; Citibank, N.A.; First Interstate Bank of Casper, N.A.; Wyoming Community Development Authority, Defendants-Appellees.

No. 86–3544.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 12, 1986.

Decided April 27, 1987.

Dexter A. Washburn, Seattle, Wash., for plaintiffs-appellants.

Paul L. Ahern, Jr., Seattle, Wash., for defendants-appellees.

Before TANG, SCHROEDER and NORRIS, Circuit Judges.

TANG, Circuit Judge:

The Durnings appeal the district court's dismissal of their securities fraud action for failure to state a claim upon which relief can be granted.

The Durnings brought suit in United States District Court for the District of Washington pursuant to the jurisdictional provisions of the Securities Act of 1933, 15 U.S.C. § 77v, and the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, and under diversity jurisdiction pursuant to 28 U.S.C. § 1332.

The Durnings allege violations of federal and state securities laws, common law negligent misrepresentation, breach of contract, tortious breach of the covenant of good faith and fair dealing, breach of fiduciary duty, unjust enrichment, and violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68. The gravamen of their complaint is that the defendants, in connection with a bond issue, distributed an Official Statement, a disclosure document equivalent to a prospectus, that failed to inform investors that the bonds were redeemable prior to 1991. The Durnings attached several documents to the complaint, including a copy of the Official Statement, a description of the bonds by Moody's Investor's Service stating that the bonds were not callable before June 1, 1991, and a confirmation statement from Shearson/American Express describing the bonds as callable on June 1, 1991.

All four defendants moved to dismiss under Fed.R.Civ.P. 12(b)(6) arguing that the Official Statement refutes the Durnings' allegations. The court ruled that "[w]hen the allegations of the complaint are refuted by an attached document, the Court need not accept the allegations as being true." *Durning v. First Boston Corp.*, 627 F.Supp. 393, 395 (W.D.Wash. 1986). The court held, as a matter of law, that the Official Statement is not ambiguous and informs the investors that the bonds were redeemable prior to June 1, 1991. *Id.* at 397.

Because we find that the complaint alleges sufficient facts to state a claim which

are not, as a matter of law, refuted by the Official Statement, we reverse.

## FACTS

This lawsuit arises out of a $75,000,000 issue of tax exempt single family mortgage revenue bonds by the Wyoming Community Development Authority ("Authority"). First Interstate Bank of Casper is the trustee for the bond issue. Citibank is the paying agent. First Boston Corporation is the lead underwriter for the syndicate which marketed the bonds.

The Authority was created to provide financing for housing construction in Wyoming. The Authority used the bond proceeds to purchase mortgage loans on residential real property from financial institutions and made those loans available to home buyers at low interest rates. In December of 1981, the Authority sold the bonds to the underwriters, led by First Boston, for distribution to the public. The Durnings purchased four bonds from the first of two series issued. Each bond had a face value of $5,000 and a maturity date of June 1, 1996.

The authority recalled $28,000,000 of bonds in June 1983 and another $4,000,000 in June 1985. One of Durnings' bonds was recalled in 1985. The Durnings allege that this resulted in the loss of $4,000 in interest payments and caused the value of their remaining three bonds to diminish in the secondary trading market.

## DISCUSSION

■ We review de novo a dismissal pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. *Fort Vancouver Plywood*

*Co. v. United States,* 747 F.2d 547, 552 (9th Cir.1984). A complaint should not be dismissed under the rule "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also, Amfac Mortgage Corp. v. Arizona Mall of Tempe, Inc.,* 583 F.2d 426, 429–30 (9th Cir.1978). All allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Western Reserve Oil & Gas Co. v. New,* 765 F.2d 1428, 1430 (9th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 795, 88 L.Ed.2d 773 (1986). If a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint. *Amfac Mortgage Corp.,* 583 F.2d at 429. These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim. *Id.* at 429–30.

Section 17(a)(2) of the Securities Act of 1933 [1] and Securities and Exchange Commission Rule 10b–5 [2] promulgated under Section 10 of the Securities Exchange Act of 1934 [3] make it unlawful for any person to fail to state a material fact in connection with an offer for the sale of securities. These laws insure disclosures by the sellers of securities so purchasers can make informed choices. *Cf. TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 448, 96 S.Ct. 2126, 2131, 48 L.Ed.2d 757 (1975) (discussing Rule 14a–9 which prohibits false or misleading statements in proxy statements).

---

1. 15 U.S.C. § 77q.

 "(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly

 \* \* \* \* \* \*

 (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading...."

2. 17 C.F.R. § 240.10b–5.

 "It shall be unlawful for any person, directly or indirectly, ...

 \* \* \* \* \* \*

 (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading...."

3. 15 U.S.C. § 78j.

A corporation has no right to recall its bonds prior to maturity except as provided by the bonds themselves. W. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations*, § 2731 (H. Schlagman, revised edition, 1981). The creation of a sinking fund alone does not give the issuer a right to redeem early. *Id.* (*citing Chicago and I.R. Co. v. Pyne*, 30 F. 86 (C.C.S.D.N.Y.1887)).

The complaint alleges that the Official Statement failed to disclose a material fact: that the bonds were callable prior to June 1, 1991. The parties agree that callability of a bond is a material fact. The dispute, however, centers on whether the Official Statement adequately disclosed the fact of callability. To determine whether the Official Statement was misleading, we apply the "reasonable investor" test: whether an investor who had been reasonably diligent in reviewing the Official Statement would have been mislead as to the callability of the bonds. *See Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1306 (9th Cir.1982).[4] This is an objective test. *Id.*

Whether an Official Statement adequately discloses callability is a mixed question of law and fact. *Cf. TSC Industries*, 426 U.S. at 450, 96 S.Ct. at 2132. "The determination requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact." *Id.* Only if the disclosure is so obvious that reasonable minds cannot differ is the issue appropriately resolved as a matter of law. *Id.* Like materiality, adequacy of disclosure is normally a jury question. *Admiralty Fund*, 677 F.2d at 1306.

The district court cited three sections of the Official Statement in support of the dismissal. The first is a sentence on page one which reads: "The Bonds will be subject to redemption prior to maturity as more fully set forth herein, including mandatory redemption at par from unexpended proceeds, prepayments and certain revenues." The second section the court cited explained three means of redemption: (1) Sinking Fund Redemption, (2) Mandatory Redemption at Par, and (3) Optional Redemption. The Sinking Fund Redemption and Optional Redemption provisions clearly state certain dates prior to maturity on which the bonds can be called. The earliest of these dates is June 1, 1991, five years prior to maturity. The Mandatory Redemption at Par section provides:

> The Bonds will be subject to mandatory redemption at a redemption price equal to 100% of the principal amount of the Bonds to be redeemed, plus interest accrued to the redemption date, from amounts on deposit in the Mandatory Redemption Account representing (i) Bond proceeds deposited from the Program Fund and remaining unexpended on May 1, 1983, (ii) Prepayments of Mortgage Loans, (iii) amounts withdrawn from the Bond Reserve Fund as the result of the reduction of the Bond Reserve Requirement and (iv) excess revenues, subject to the Authority's right, under certain conditions, to withdraw from the lien of the Indenture investment earnings on amounts on deposit in the Special Reserve Fund.

The third section that the district court discussed appears on page 16 of the Official Statement:

> Due to the many factors which influence economic and financial market conditions, the Authority is not able to predict with any significant degree of reliability the expected level of prepayments it will actually receive on the Mortgage Loans.

---

4. In *Admiralty Fund*, we expanded the "reasonable investor" standard for determining whether a fact is material to cover the issue of adequacy of disclosure. The test for determining whether or not a fact is material is whether "there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Industries*, 426 U.S. at 449, 96 S.Ct. at 2132. We applied that test in *Admiralty Fund*, albeit without explanation, to evaluate whether a prospectus was misleading as a matter of law. The application of the reasonable investor test is appropriate because adequacy of disclosure, like materiality, only can be judged against an objective standard of investor behavior.

To the extent that prepayments occur, the Authority is required by the Indenture to apply amounts received to the redemption of Bonds.

The district court concluded that "these three sections, taken together, unambiguously inform the investor that mandatory redemption may take place at any time the mandatory redemption account has sufficient funds." 627 F.Supp. at 396.

The Durnings vigorously maintain that no reasonable investor could decipher from reading the Official Statement that the bonds were callable prior to the earliest date listed in the tables of the redemption section, June 1, 1991. They offer the Moody's rating and the Shearson/American Express confirmation statement in support of their contention. Although the statement on the first page alerts the investor that the bonds can be redeemed prior to maturity, the details are set forth within the document. The redemption provisions are described on pages 13 and 14 of the 44–page document in a section entitled "The Bonds." The first sentence of the Sinking Fund Redemption provision says "The Bonds due June 1, 1996 will be subject to mandatory redemption prior to maturity, in part by lot on any June 1, on and after June 1, 1994...." A table following the paragraph shows the principal amount of the bonds to be redeemed in 1994 and 1995. The first sentence of the Optional Redemption provision states that "the Bonds will be subject to redemption, at the option of the Authority on any interest payment date on and after June 1, 1991...." A table following the paragraph lists six redemption periods beginning June 1, 1991 and ending June 1, 1996 with the optional redemption prices available during those periods.

By contrast, there are no specific redemption dates in the subdivision entitled "Mandatory Redemption at Par" and no tables. Instead, the text describes a "Mandatory Redemption Account." A jury could conclude that a reasonable investor might fail to understand that the bonds are redeemable under this section whenever funds in the Account are sufficient. The warning on page 16 that the Authority is not able to predict when it will actually receive prepayments of the mortgage loans may alert the investor that the time of redemption is uncertain, however, it does not necessarily alert the investor that such redemption can occur prior to 1991.

In reaching its decision, the district court relied on *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97 (5th Cir. 1974). In that case the Alabama Power Company had issued bonds that Associated Builders had bought on the secondary market. Based upon the prospectus, Associated Builders believed that the bonds were absolutely protected against call until November 1, 1975. In 1973, Alabama Power sought to redeem several of these bonds and Associated Builders filed suit against Alabama Power for damages under federal securities laws. The court, noting that 12(b)(6) motions are disfavored, nevertheless granted Alabama's motion to dismiss. The court concluded that "the prospectus adequately disclosed the redemption provisions of the bonds."

*Associated Builders* is distinguishable from this case. The central issue in both cases, whether the Statements adequately informed the investor of callability, is a fact specific inquiry, and the prospectus in *Associated Builders* differs significantly from the Official Statement at issue in this case. In *Associated Builders*, portions of the prospectus expressly notified the investor that the bonds were callable "at any time on 30 days' notice." There were no allegations of confusion on the part of experts comparable to the Moody's rating and Shearson American Express confirmation statements plaintiffs submitted in this case. The case at bar is not a case where the issue of adequate disclosure could be determined by a trial court as a matter of law.

In reviewing the complaint and the Official Statement, we cannot conclude, as did the district court, that "reasonable minds cannot differ," *TSC Industries*, 426 U.S. at 450, 96 S.Ct. at 2133, as to whether a reasonable investor in reading this Official Statement would conclude that the bonds

were callable prior to June 1, 1991. We hold that the Durnings have stated a claim under federal securities laws [5] and that the trial court erred in deciding that the Official Statement was unambiguous as a matter of law.

Accordingly, the judgment of the district court is REVERSED and REMANDED.

---

5. Because the Durnings have stated a claim for relief under federal securities laws, we need not consider their other federal or state law allegations.