**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>LEO DEL ROSARIO and ZERLYN<br>FONCECA DEL ROSARIO,<br>　　　　　Debtors. | BAP No. CC-24-1163-SGL<br><br>Bk. No. 1:24-bk-10221-VK<br><br>Adv. No. 1:24-ap-01018-VK |
| M.O.,<br>　　　　　Appellant,<br>v.<br>LEO DEL ROSARIO; ZERLYN<br>FONCECA DEL ROSARIO,<br>　　　　　Appellees. | **OPINION** |

Appeal from the United States Bankruptcy Court
for the Central District of California
Victoria S. Kaufman, Bankruptcy Judge, Presiding

APPEARANCES

Sebastian M. Medvei of Medvei Law Group, APC argued for appellant;
Craig Gerald Margulies of Margulies Faith LLP argued for appellees.

Before: SPRAKER, GAN, and LAFFERTY, Bankruptcy Judges.

SPRAKER, Bankruptcy Judge:

## INTRODUCTION

Plaintiff and appellant M.O., a minor, appeals from an order

dismissing his nondischargeability complaint against chapter 7[1] debtors Leo Del Rosario and Zerlyn Fonceca Del Rosario. The complaint alleged a single claim for nondischargeability under § 523(a)(6). The bankruptcy court dismissed the complaint under Civil Rule 12(b)(6) without leave to amend.

The sole issue on appeal is purely legal and concerns the proper scope of the exception to discharge set forth in § 523(a)(6). More specifically, appellant asks us to hold that debtors' vicarious liability under California law for the intentional tort of their minor son qualifies as a nondischargeable debt for a willful and malicious injury "by the debtor[s]" under § 523(a)(6).

The bankruptcy court held that § 523(a)(6) requires the debtors themselves to commit the tortious conduct from which the debt arose. Section 523(a)(6) also requires that the debtors acted both willfully and maliciously as those terms are defined for purposes of § 523(a)(6). The appellant's complaint alleged that the underlying judgment debt arose not from debtors' actions but from vicarious liability imposed for the actions of their child. The court concluded that appellant failed to allege, and could not allege, that debtors committed the requisite tortious conduct with the

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

requisite culpable state of mind.

We agree with the bankruptcy court's analysis. Accordingly, we AFFIRM the bankruptcy court's Civil Rule 12(b)(6) dismissal of appellant's complaint without leave to amend.

## FACTS

### A    The state court litigation.

In his prepetition state court action, appellant alleged that at the time of the incidents giving rise to his claims, he was a 13-year-old student attending class.[2] According to appellant, when he got up from his seat to turn in his homework to his teacher, another student, referred to as "DOE 1," positioned a pen on the seat of his chair such that he sat on the pen when he returned to his desk and suffered bodily injury and severe emotional distress as a result.

Appellant sued the defendant child, his parents, and others in the Los Angeles County Superior Court, in relevant part, for battery and intentional infliction of emotional distress. The state court complaint contained no allegations suggesting that debtors were directly involved in their son's misconduct. In fact, the state court complaint was silent regarding the basis for debtors' liability for their son's actions, except perhaps for paragraph 8, which indicated that each of the defendants was

---

[2] The underlying factual allegations are set forth in appellant's state court complaint, which he attached as an exhibit and incorporated by reference into the operative complaint filed in his subsequent nondischargeability action.

liable for every other defendant's conduct based on a principal-agent theory of vicarious liability.

Appellant later obtained terminating sanctions against debtors for their failure to cooperate in discovery. The state court then entered a default judgment in the amount of $1,045,609.46 against debtors. Again, the form default judgment was silent as to the basis of debtors' liability.

**B.      The adversary proceeding and the motion to dismiss.**

Debtors commenced their chapter 7 bankruptcy in February 2024. They listed appellant as a judgment creditor in the amount of $1,045,609.46. In May 2024, appellant filed a complaint to except this judgment debt from discharge under § 523(a)(6). Appellant amended his nondischargeability complaint in August 2024 ("FAC"). Whereas the state court complaint had been virtually silent regarding the basis for debtors' liability for their son's misconduct, appellant alleged in the FAC that debtors' liability was "based on [debtors'] vicarious liability for the willful and malicious conduct of [debtors'] minor son."

In August 2024, debtors moved to dismiss the FAC without leave to amend. Debtors pointed to appellant's allegation that the state court judgment entered against them was founded on their vicarious liability for their son's misconduct. They asserted that § 523(a)(6) did not apply because appellant failed to allege that debtors themselves committed any tortious conduct or acted willfully and maliciously within the meaning of the statute. Indeed, they claimed that the FAC's allegation of vicarious liability

4

was inconsistent with the tortious conduct and state of mind requirements for nondischargeability under § 523(a)(6).

Appellant opposed the dismissal motion. He argued that the state court judgment barred debtors from challenging the nondischargeability of the judgment debt under the doctrine of issue preclusion. In addition, he asserted that under *Bartenwerfer v. Buckley*, 598 U.S. 69 (2023), and prior case law, a judgment holding a defendant vicariously liable for the tortious conduct of another was sufficient to except the resulting debt from discharge under § 523(a)(6).

After holding a hearing on the dismissal motion, the bankruptcy court dismissed appellant's complaint without leave to amend. As the court explained, appellant had failed to allege any facts plausibly suggesting that debtors themselves committed any tortious acts "with the requisite intent to inflict injury, or with the belief that injury was substantially certain to occur . . . ." As the court also noted, appellant's allegations admitted that the judgment debt rendered in the underlying state court action was specifically based on debtors' vicarious liability for their son's misconduct. The court concluded that such vicarious liability could not as a matter of law qualify as a willful and malicious injury "by the debtor[s]" for purposes of § 523(a)(6).

Appellant timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and

157. We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Does § 523(a)(6) cover debts arising from the tortious conduct of another for which the debtor is held vicariously liable?

## STANDARD OF REVIEW

This appeal requires us to construe § 523(a)(6). Issues of statutory interpretation are questions of law we review de novo. *Sachan v. Huh (In re Huh)*, 506 B.R. 257, 262 (9th Cir. BAP 2014) (en banc), *partially overruled on other grounds by Bartenwerfer*, 598 U.S. at 72. De novo review means we give no deference to the bankruptcy court's decision. *Id.*

## CIVIL RULE 12(b)(6) STANDARDS

Civil Rule 12(b)(6) is made applicable in adversary proceedings by Rule 7012. When we review an order granting a Civil Rule 12(b)(6) motion, we consider the legal sufficiency of the complaint. *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, (2009)). In other words, a claim is facially plausible when it contains factual allegations that, if taken as true, would allow the court to reasonably infer that the plaintiff is entitled to the relief requested. *Iqbal*, 556 U.S. at 678.

In reviewing the sufficiency of a complaint under Civil Rule 12(b)(6), the court must accept as true all facts properly alleged and draw all reasonable inferences in favor of the appellant. *Newcal Indus., Inc. v. Ikon Off. Sols.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). However, courts need not accept as true conclusory allegations or legal conclusions cast as factual allegations. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Nor must it accept as true allegations that are contradicted by exhibits attached to the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *as amended*, 275 F.3d 1187 (9th Cir. 2001); *see also Cavanaugh v. Cnty. of San Diego*, 2020 WL 6703592, at *6 (S.D. Cal. Nov. 12, 2020) ("Plaintiffs may plead themselves out of court by attaching exhibits inconsistent with their claims because the court may disregard contradictory allegations." (citation omitted)), *judgment entered*, 2020 WL 6702029 (S.D. Cal. Nov. 13, 2020), *and aff'd*, 2021 WL 6103115 (9th Cir. Dec. 22, 2021).[3]

---

[3] Given our analysis of § 523(a)(6) set forth below, the specific basis of debtors' vicarious liability is irrelevant. Yet, we are concerned by appellant's attempt in the FAC to introduce Cal. Civil Code § 1714.1 ("§ 1714.1") as the basis for the default judgment against debtors. Generally speaking, § 1714.1 makes parents in "custody and control" of their minor child "jointly and severally liable" for their minor child's "willful misconduct" and imputes to the parents such misconduct "for all purposes of civil damages." But the statute limits the amount of a parent's liability for their child's tortious conduct to $25,000 or less during the applicable time. § 1714.1(c), (d). Appellant's current citation to § 1714.1 makes no sense. The state court complaint did not reference or allude to this statute. To the contrary, the only basis for the parents' liability pled in that complaint was agency. Nor did appellant allege that debtors were in "custody and control" of their son while he was at school when the underlying tortious conduct occurred. More importantly, the state court default judgment imposed

7

In addition to the allegations of the complaint itself, courts may also consider the existence and content of documents attached to and referenced in the complaint as exhibits. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001), *partially overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002); *Durning v. First Bos. Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987). Even when a document is not physically attached to the complaint, courts may consider its existence and contents when its authenticity is not contested and when the plaintiff necessarily relies on it in his complaint. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Lee*, 250 F.3d at 688.

## DISCUSSION

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." The bankruptcy court dismissed the FAC because appellant failed to allege that debtors committed the willful and malicious injury giving rise to the claim against them. Appellant argues that after *Bartenwerfer*, a debtor's vicarious liability under state law for another's

---

over $1,000,000 in damages against debtors without specifying a particular basis. This amount greatly exceeds the applicable statutory damages cap. In short, because exhibits attached to the FAC contradict appellant's allegation regarding § 1714.1, we need not, and do not, accept this allegation in the FAC as true. *See Sprewell*, 266 F.3d at 988; *Cavanaugh*, 2020 WL 6703592, at *6; *see also Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007–08 (9th Cir. 2015) (relying in part on deed of trust not attached to the plaintiff's complaint to negate allegation that defendant owed certain contractual duties to plaintiff).

misconduct is now treated as establishing their misconduct for purposes of excepting all the resulting debts from discharge under § 523(a). In short, he argues that vicarious liability not only extends **liability** but also imputes the wrongful conduct and intent of the tortfeasor to the third-party debtor for purposes of determining **nondischargeability** of a debt under § 523(a)(6). But appellant's expansive interpretation of *Bartenwerfer* is contrary to its reasoning. Indeed, *Bartenwerfer*'s statutory analysis reflects that to except a debt from discharge under § 523(a)(6), a creditor must prove that its claim arises from willful and malicious actions by the debtor. Because the FAC alleged instead that debtors' child committed the tortious acts giving rise to their liability, appellant failed to state a claim under § 523(a)(6).

## A.    The effect of *Bartenwerfer* on the scope of § 523(a)(2)(A).

It is a fundamental tenet of modern bankruptcy law that the debts of the "honest but unfortunate debtor" generally should be discharged and hence the exceptions to discharge set forth in § 523(a) should be narrowly construed. *See In re Huh*, 506 B.R. at 262-63. *Bartenwerfer* acknowledged this general principle but found it inapt for purposes of interpreting whether § 523(a)(2)(A) renders nondischargeable an innocent partner's vicarious liability for his partner's fraud. *Bartenwerfer*, 598 U.S. at 77 ("We have never used this principle to artificially narrow ordinary meaning, which is what Bartenwerfer asks us to do.").

*Bartenwerfer* began its statutory analysis "where we always do: with

9

the text of the statute." *Id.* at 74 (quoting *Van Buren v. United States*, 593 U.S. 374, 381 (2021)). Turning to the language of § 523(a)(2)(A), the Supreme Court noted that "the passive-voice statute does not specify a fraudulent actor." *Id.* at 75. Rather, under this subsection, "[t]he debt must result from someone's fraud, but Congress was 'agnosti[c]' about who committed it." *Id.* (citing *Watson v. United States*, 552 U.S. 74, 81 (2007)). The Court reasoned that "[u]nderstanding § 523(a)(2)(A) to reflect the passive voice's usual 'agnosticism' is thus consistent with the age-old rule that individual debtors can be liable for fraudulent schemes they did not devise." *Id.* at 76.

*Bartenwerfer* then contrasted the passive nature of § 523(a)(2)(A) with its "neighboring provisions, which both require action by the debtor herself." *Id.* at 77. Specifically, § 523(a)(2)(B)(iv) requires a misrepresentation "that **the debtor caused to be made or published with intent to deceive.***" Id.* (emphasis in original). Similarly, § 523(a)(2)(C) requires that the consumer debts at issue be for "luxury goods or services **incurred by an individual debtor**" and that any cash advances be "**obtained by an individual debtor**." *Id.* at 78 (emphasis in original). According to *Bartenwerfer*, the most likely inference to be drawn from its textual analysis was that § 523(a)(2)(A) "excludes debtor culpability from consideration given that (B) and (C) expressly hinge on it." *Id.*

*Bartenwerfer* next proceeded to examine prior Supreme Court precedent—and Congress' response to it—to confirm its textual analysis. *Id.* at 79. It first focused on *Strang v. Bradner*, 114 U.S. 555 (1885). At the time

10

of *Strang*, the operative bankruptcy statute excepted from discharge any "debt created by the fraud or embezzlement **of the bankrupt**." *Id.* at 79 (quoting the Bankruptcy Act of 1867, Ch. 176, § 33, 14 Stat. 517, 533 (repealed 1878)) (emphasis supplied by *Bartenwerfer*). Despite the inclusion of the phrase "of the bankrupt" in the 1867 statute, *Strang* held that the nondischargeability of partnership debt arising from one partner's fraud extended to other partners innocent of the fraud. *Id.* at 79-80 (citing *Strang*, 114 U.S. at 561). To reach this conclusion, *Strang* relied on common law partnership and agency principles governing **liability** to impute the fraud of one partner to all partners for purposes of **nondischargeability**. *Id.* at 80 (citing *Strang*, 114 U.S. at 561). It further reasoned that the absence of wrongful conduct or a culpable state of mind by the debtors was irrelevant because "the partners, who were not themselves guilty of wrong, received and appropriated the fruits of the fraudulent conduct of their associate in business." *Id.* (citing *Strang*, 114 U.S. at 561).[4]

---

[4] *Bartenwerfer*'s description of *Strang* highlights the weak link in *Strang*'s reasoning. *Strang* treated nondischargeability and liability as if they were the same thing—or as if the common law's treatment of vicarious liability necessarily should govern the issue of nondischargeability in bankruptcy. Though *Bartenwerfer* declined to opine whether *Strang* was correctly decided, *id.* at 80 n.3, modern conceptions of statutory construction and the scope and nature of the Bankruptcy Code's nondischargeability provisions would appear to prevent *Strang* from being decided today the way it was decided in 1885. Applying these modern conceptions, the doctrinal underpinnings of *Strang* dealing with the common law vicarious liability simply cannot eclipse the plain language of the statute regarding the scope of nondischargeability. The Supreme Court has explained that "[s]ince 1970, . . . the issue of nondischargeability has been a matter of federal law governed by the terms of the

*Bartenwerfer* then turned its attention to the revision of our country's bankruptcy laws following *Strang*—subsumed within the Bankruptcy Act of 1898 ("1898 Act"), Ch. 541, 30 Stat. 544 (repealed 1978). The 1898 Act omitted the phrase "of the bankrupt" from the new exception to discharge statute. As stated in the 1898 dischargeability statute, "[a] discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as . . . are judgments in actions for frauds, or obtaining property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another." *Id.* at 80-81 (quoting 1898 Act, § 17, 30 Stat. at 550 (last codified as 11 U.S.C. § 35(a)(2), (8) (1976)). According to *Bartenwerfer*, Congress' deletion of the phrase "of the bankrupt" from the 1898 Act's exception to discharge statute "unmistakabl[y]" was meant to embrace *Strang*'s holding that an innocent partner's liability for partnership debts arising from another partner's fraud should be nondischargeable in bankruptcy. *Id.*

The final step in *Bartenwerfer*'s analysis simply observed that our modern Bankruptcy Code essentially "reenacted the discharge exception for fraud without change"—at least with respect to the continuing omission from § 523(a)(2)(A) of any reference to "by the debtor." *Id.* at 80. According to *Bartenwerfer*, this continuing omission enabled it to conclude that Congress "embraced *Strang's* holding" by making all partnership

---

Bankruptcy Code." *Grogan v. Garner*, 498 U.S. 279, 284 (1991). Contrary to the reliance on state law in *Strang,* dischargeability is now purely an issue of bankruptcy law.

fraud debts nondischargeable under § 523(a)(2)(A) regardless of whether the debtor herself had committed any fraud. *Id.* at 80-81.[5]

In sum, *Bartenwerfer* relied on a combination of textual analysis, prior Supreme Court precedent, and the congressional response to that Supreme Court precedent to conclude that § 523(a)(2)(A) rendered nondischargeable a debtor-partner's vicarious liability for another partner's fraud. The next section of our decision examines the significance of *Bartenwerfer* for purposes of interpreting the scope of § 523(a)(6).

**B.** ***Bartenwerfer* does not support appellant's assertion that § 523(a)(6) excepts from discharge debts arising from vicarious liability.**

Appellant references much of *Bartenwerfer*'s reasoning but then draws from this reasoning an unwarranted conclusion: that the absence or presence of "by the debtor" (or similar phrases) in the separate paragraphs of § 523(a) "is not determinative to whether an exception applies to vicarious liability for nondischargeable conduct." Aplt. Opn. Br. at 15. For purposes of interpreting § 523(a)(6), the reasoning and detailed analysis applied in *Bartenwerfer* are both antithetical to appellant's position. Under

---

[5] *Bartenwerfer* effectively overruled this Panel's en banc decision in *Huh*, which held that § 523(a)(2)(A) did not apply to vicarious liability for fraud unless the innocent principal knew or should have known of her agent's fraud. *Huh*'s analysis largely relied on *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), and *Bullock v. BankChampaign, N.A.*, 569 U.S. 267 (2013). According to *Huh*, "[t]he *Geiger* and *Bullock* decisions appear to cut strongly against applying imputed fraud under § 523(a)(2)(A) to except a debt from discharge in the absence of some showing of culpability on the part of the debtor." 506 B.R. at 267. However, *Bartenwerfer* perceived no tension between its reading of § 523(a) and its previous decisions in *Geiger* and *Bullock*. *See Bartenwerfer*, 598 U.S. at 77.

*Bartenwerfer*'s rationale, the presence of the phrase "by the debtor" in § 523(a)(6) is critical. To hold otherwise would violate the very statutory interpretation and dichotomy on which *Bartenwerfer* focused.

Applying to § 523(a)(6) the same methodology *Bartenwerfer* used to distinguish the text of § 523(a)(2)(A) from the text of (B) and (C), the presence in § 523(a)(6) of the phrase "by the debtor" must be given at least the same weight as *Bartenwerfer* gave its omission from § 523(a)(2)(A).[6] In this sense, § 523(a)(6) is the polar opposite of § 523(a)(2)(A). In short, appellant offers no argument as to why the clear language of § 523(a)(6) should not be applied as it reads: to require the creditor to prove that the **debtor** both caused the willful and malicious injury and harbored the requisite intent.

As with *Bartenwerfer's* textual analysis, so too with its discussion of *Strang* and the congressional response to it. *Bartenwerfer* used both to help construe § 523(a)(2)(A). Applying the same methodology to our construction of § 523(a)(6) bolsters the conclusion that § 523(a)(6) does not apply to debtors' vicarious liability for their son's misconduct. Though we employ the same methodology, we focus here on the evolution of the nondischargeability provision governing debts for willful and malicious

---

[6] Indeed, the Supreme Court made this very point in rejecting Bartenwerfer's statutory analysis of § 523(a)(2): "This argument flips the rule that '[w]hen Congress includes particular language in one section of a statute but omits it in another section of the same Act,' we generally take the choice to be deliberate." *Bartenwerfer*, 598 U.S. at 78 (quoting *Badgerow v. Walters*, 596 U.S. 1, 11 (2022)).

injuries. Following *Bartenwerfer's* reasoning, this evolution conclusively fixes the scope of § 523(a)(6).

As with debts for fraud, section 17 of the 1898 Act omitted any reference to "of the bankrupt" or "by the debtor" when excepting from discharge debts "for willful and malicious injuries to the person or property of another; . . . ." 1898 Act, § 17(a)(2); 30 Stat. at 550 (last codified as 11 U.S.C. § 35(a)(8) (1976)).[7] Just as the statute did not condition the nondischargeability of debts for fraud on any action by the debtor, no such requirement existed for willful or malicious acts under the 1898 Act. It was not until the Bankruptcy Reform Act of 1978, Pub. L. No. 95–598, 92 Stat. 2549, 2591, that Congress adopted the current language of § 523(a)(6) to except from discharge only those debts: "(6) for willful and malicious injury by the debtor to another entity or to the property of another entity." In doing so, Congress specifically chose to add the phrase "by the debtor" when framing the scope of nondischargeability for willful and malicious injury in § 523(a)(6). As *Bartenwerfer* explained, Congress must have been

---

[7] As originally enacted, section 17(a)(2) of the 1898 Act not only excepted from discharge liabilities for fraud but also excepted all liabilities for "willful and malicious injuries to the person or property of another." Before its repeal in 1978, the 1898 Act was amended to distinguish between willful and malicious conversion and other willful and malicious injuries. The former remained part of section 17(a)(2), while the latter became the substance of a new paragraph—section 17(a)(8) (last codified as 11 U.S.C. § 35(a)(8) (1976)). As with liabilities for fraud and willful and malicious conversion under 11 U.S.C. § 35(a)(2), willful and malicious injuries other than conversion under 11 U.S.C. § 35(a)(8) did not require any action "by the debtor." The Bankruptcy Reform Act of 1978 combined the two different discharge exceptions for willful and malicious injuries into a single paragraph, § 523(a)(6).

aware that it had embraced *Strang*'s holding by omitting similar phrases in 1898 and in 1978 from the exception to discharge provisions for fraud debts. Thus, in the parlance of *Bartenwerfer,* the "unmistakable implication" of subsequently **including** "by the debtor" in § 523(a)(6) is that Congress rejected *Strang* and the "passive voice" nondischargeability of debts for intentional torts other than fraud based merely on the nature of the debt, whosoever may be liable. Rather, when Congress subsequently inserted the phrase "by the debtor," it knowingly required proof that the debtors themselves willfully and maliciously injured the creditor to except the debt from discharge under § 523(a)(6). In short, *Bartenwerfer* compels the conclusion that by changing the statutory language of § 523(a)(6) from passive to active, Congress precluded the nondischargeability of a debtor's vicarious liability for intentional torts other than fraud.

## C. *In re Cecchini* **does not help appellant.**

Appellant next claims that the nondischargeability of debtors' vicarious liabilities under § 523(a)(6) is mandated by *Impulsora Del Territorio Sur, S.A. v. Cecchini (In re Cecchini)*, 780 F.2d 1440 (9th Cir. 1986), *partially overruled on other grounds by Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). In *Cecchini*, the Ninth Circuit Court of Appeals held that two partners' debts for conversion of prepayment checks were nondischargeable under § 523(a)(6). The court considered parallel challenges in Joseph Cecchini's and Peter Robustelli's separate bankruptcy cases to the dischargeability of the debts arising from the partnership's conversion of those checks. The

16

Ninth Circuit first considered the standard for determining a willful and malicious injury under § 523(a)(6). It held that a "wrongful act such as conversion, done intentionally, necessarily produces harm and is without just cause or excuse, . . . is 'willful and malicious' even absent proof of a specific intent to injure." *Id*. at 1443. Applying this standard, it concluded that there was "ample evidence from which to determine the involvement" of the two partners. *Id.* Cecchini had directed the partnership's agent to seize the payments which were endorsed and deposited into the partnership's account. His intent was well established, but there was "no evidence in the record concerning Robustelli's direct involvement in converting the funds . . . ." *Id.* at 1444. Still, Robustelli's debt was held to be nondischargeable because Cecchini's actions were on behalf of the partnership in its ordinary course, and Robustelli had participated in the benefits of the conversion. *Id*. The Ninth Circuit imputed Cecchini's knowledge and intentional actions to Robustelli based on "basic partnership law" principles governing liability. *Id.* at 1444. The Ninth Circuit has long since acknowledged that *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), abrogated *Cecchini*'s holding concerning the requisite state of mind for nondischargeability under § 523(a)(6). *See Peklar v. Ikerd (In re Peklar)*, 260 F.3d 1035, 1038 (9th Cir. 2001).

Appellant assumes, without discussion, that imputation of the partner's actions for claims under § 523(a)(6) under *Cecchini* survived the Supreme Court's decision in *Bartenwerfer.* He urges this Panel to impute the

17

willful and malicious intent of debtors' child to them.[8] Even if *Cecchini* somehow survived *Bartenwerfer*, the record demonstrates that appellant's allegations fall far outside its ambit.[9] The intentional acts of the partner to convert the checks were imputed to the "innocent" debtor in *Cecchini* because the tortious conduct was undertaken in the ordinary course of the partnership for its benefit, which served to benefit Robustelli. *Id.* at 1444.

Appellant made no such allegations in his complaint and has failed to explain what possible allegations could support such an inference here. Appellant merely contends that debtors were liable for the acts of their child as their agent. Assuming such an agency relationship was sufficiently pled, appellant fails to identify the scope of the agency while the child was

---

[8] In *Tsurukawa v. Nikon Precision, Inc. (In re Tsurukawa)*, 258 B.R. 192 (9th Cir. BAP 2001), we held that, "a marital union alone, without a finding of a partnership or other agency relationship between spouses, cannot serve as a basis for imputing fraud from one spouse to the other" for purposes of excepting a debt from discharge under § 523(a)(2)(A). *Id.* at 198. It is unclear whether *Tsurukawa* survived *Bartenwerfer*, and we express no opinion on that issue.

[9] Shortly after *Cecchini*, the Ninth Circuit questioned its holding in *La Trattoria, Inc. v. Lansford (In re Lansford)*, 822 F.2d 902, 904-05 (9th Cir. 1987), in the context of nondischargeability claims against the debtor-wife brought under § 523(a)(2). In *Lansford*, then Ninth Circuit Judge Anthony Kennedy acknowledged: "[w]ere we to rely on strict agency or partnership principles, we might be forced to conclude that Cecily Lansford's debt is non-dischargeable regardless of her knowledge of the fraud or her own culpability." But citing *Walker v. Citizens State Bank of Maryville, Mo. (In re Walker)*, 726 F.2d 452, 454 (8th Cir. 1984), which addressed the scope of agency liability under § 523(a)(6), *Lansford* also cautioned: "[i]n light of the bankruptcy code's purpose of providing a fresh start . . ., we believe the breadth of the proposition stated in *Cecchini* deserves more thorough consideration . . . ." *Id.* at 905. Ultimately, both debtors in *Lansford* were found to have engaged in culpable conduct warranting the nondischargeability of the debts against them.

in school and out of their control. Indeed, appellant fails to suggest how an intent to injure another was within that agency or how it could benefit debtors to bring it within the scope of any agency. This alone distinguishes the instant case from *Cecchini*. *See Bartenwerfer*, 598 U.S. at 84 (J. Sotomayor, concurring) ("The Court here does not confront a situation involving fraud by a person bearing no agency or partnership relationship to the debtor. Instead, the relevant legal context concerns fraud only by 'agents' and 'partners within the scope of the partnership.'" (cleaned up)).

More fundamentally, *Cecchini* appears contrary to the ordinary meaning of § 523(a)(6) as elucidated by *Bartenwerfer*'s textual analysis. *Cecchini* effectively eliminated the phrase "by the debtor" that Congress added to § 523(a)(6) in 1978. Appellant argues that California law renders this phrase irrelevant because state law imposes the underlying liability on debtors for an intentional and malicious injury. This is simply a repackaging of his other arguments, which continues to ignore the difference between the underlying liability under applicable nonbankruptcy law and the federal requirements for nondischargeability established by § 523(a). In this instance, § 523(a)(6) requires that to render a debt nondischargeable the debtor must have the willful and malicious intent to injure as evidenced by the use of the phrase "by the debtor." Appellant may not simply read this language out of the statute.

We are bound by the Ninth Circuit's published decisions, and we treat them as binding precedent. *See Deitz v. Ford (In re Deitz)*, 469 B.R. 11,

19

22 (9th Cir. BAP 2012), *aff'd and adopted*, 760 F.3d 1038 (9th Cir. 2014). But when the reasoning in an intervening Supreme Court decision "closely on point," is "clearly irreconcilable" with the reasoning of the Ninth Circuit precedent, the Ninth Circuit precedent no longer is considered binding. *Id.* at 23 (citing *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc)). We do not lightly turn away from *Cecchini.* The Supreme Court obviously did not address § 523(a)(6) in *Bartenwerfer,* but it drew a clear dichotomy between those provisions in § 523(a)(2) that referenced acts by the debtor and those which did not. Section 523(a)(6) requires proof of "willful and malicious injury **by the debtor** to another . . . ." (Emphasis added.) In light of *Bartenwerfer*'s statutory construction and reasoning, we do not see how *Cecchini*'s imputation under § 523(a)(6) could have survived.

In sum, *Bartenwerfer*'s emphasis on the presence or absence of the phrase "by the debtor" seems to preclude *Cecchini*'s holding applying § 523(a)(6) to except from discharge the vicarious liability of an innocent partner for another partner's intentional tort other than fraud. We see no reasoned difference in the case of an alleged agency, and appellant offers no basis to make such a distinction.

D.   **The default judgment against debtors for their son's tortious conduct does not mean their debt is nondischargeable under § 523(a)(6).**

Appellant also asserts that the preclusive effect of his state court default judgment conclusively determined the nondischargeability of

20

debtors' judgment debt. He points out that the state court default judgment evidently applied California law to hold debtors vicariously liable for their son's intentional tort, though the basis for imposition of vicarious liability against the parents is unclear.[10] Appellant reasons that debtors' vicarious liability for their son's tort established that they willfully and maliciously injured him under the doctrine of issue preclusion. According to appellant, the judgment should be nondischargeable under § 523(a)(6) regardless of the theory used to extend liability to debtors for their son's tortious conduct. Appellant thus reasons that because debtors are barred from relitigating their liability, the bankruptcy court erred in dismissing his nondischargeability complaint.

Appellant's attempted use of the default judgment to preclude debtors from litigating whether they willfully and maliciously intended to cause him injury is simply incorrect. Fundamentally, there is nothing to suggest that the state court actually and necessarily litigated this issue when it imposed liability on debtors for their son's actions. Indeed, the complaint on which the state court granted default judgment failed to

---

[10] Appellant has—after the fact—posited multiple alternative legal theories for debtors' vicarious liability. However, the state court judgment was silent as to any particular basis for its judgment. The only potential ground for debtors' liability suggested in the state court complaint was based on basic principles of agency law. As stated at paragraph 8 of his state court complaint: "Appellant is informed and believes, and thereon alleges, that Defendants each ratified and/or authorized the acts of each of the other Defendants insofar as any one of the Defendants is the principal and/or agent, employee, contractor, partner, servant, and/or representative of the other Defendants." Ex. 1 to FAC, at 8 of 24.

allege that debtors took any action at all that caused the appellant's injury. Appellant thus has failed to establish this fundamental element of issue preclusion under California law.[11]

Clearly, the default judgment established debtors' liability, and debtors cannot relitigate their underlying liability. But as we have indicated throughout this decision, appellant continues to improperly collapse the separate questions of liability and nondischargeability. Appellant's argument is inconsistent with the Supreme Court's decision in *Grogan v. Garner*, 498 U.S. 279, 284 (1991), which is premised on the notion that state law and state courts do not, and legally cannot, determine the nondischargeability of a debt. *Id.* at 283-285. As *Grogan* explained, the issue preclusive effect of a prior state court judgment might conclusively determine liability and identical subsidiary issues arising in both the prior state court action and the subsequent nondischargeability action. However, the prior judgment does not determine the ultimate issue of nondischargeability in a subsequent nondischargeability action. *Id.* This also is why there is no claim preclusive effect arising from the prior state

---

[11] In the context of a California default judgment, an issue is subject to preclusive effect only if the defendant was aware of the prior lawsuit and one of the following two additional circumstances is present: (1) the prior court made an "express finding" determining the issue; or (2) the prior court "necessarily decided" the issue because the issue was an essential element of the relief granted. *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1247-48 (9th Cir. 2001). Here, the FAC—and the contents of the state court complaint and judgment incorporated into the FAC—are bereft of anything suggesting that the state court expressly found or necessarily decided that debtors were directly liable for the tortious conduct of their son.

court judgment when the creditor later files the nondischargeability action in the bankruptcy court. *See generally Olsen v. Bloomfield Grp., Inc.* (*In re Olsen)*, 2014 WL 7048459, at \*3 (9th Cir. BAP Dec. 11, 2014) (listing cases and stating: "[i]t is well established that claim preclusion does not apply in a § 523(a) nondischargeability proceeding.").

The Supreme Court's decision in *Bartenwerfer* reaffirms that the question of liability is the exclusive province of state law (or more aptly, applicable nonbankruptcy law), while nondischargeability is exclusively the province of Congress. *Id.* at 77-82. *Bartenwerfer* compels us to conclude that the presence of the phrase "by the debtor" in § 523(a)(6) necessarily means that vicarious liability for willful and malicious injuries caused by someone else does not render such liability of the debtor nondischargeable under § 523(a)(6).

Appellant finally offers a slightly derivative argument that dismissal was erroneous because the default judgment was sufficient to establish that debtors were **directly liable** for both battery and intentional infliction of emotional distress. This argument is frivolous. It is wholly at odds with the FAC, which alleges: "[t]he Judgment against Defendants is based on Defendants' vicarious liability for the willful and malicious conduct of Defendants' minor son." Even if the FAC did not contain this allegation, appellant attached to—and incorporated by reference into—the FAC both the state court complaint and the state court default judgment. There is absolutely nothing in either of these documents tending to support

23

appellant's claim that the state court conclusively determined for issue preclusion purposes that debtors were directly liable for battery and intentional infliction of emotional distress.

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's dismissal of appellant's complaint under § 523(a)(6) without leave to amend.[12]

---

[12] In appeals from Civil Rule 12(b)(6) dismissals, we typically consider whether the bankruptcy court should have granted leave to amend. *See, e.g.*, *Censo, LLC v. NewRez, LLC (In re Censo, LLC)*, 638 B.R. 416, 426 (9th Cir. BAP 2022), *aff'd*, 2023 WL 6866294 (9th Cir. Oct. 18, 2023). Here, however, appellant specifically and distinctly waived any right he had to amend the FAC at the dismissal hearing held in the bankruptcy court. *See Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 20 n.1 (2017) (stating that "waiver is the intentional relinquishment or abandonment of a known right" (cleaned up)).