## *PRELIMINARY PRINT*

# VOLUME 598 U. S. PART 1
### PAGES 69–84

# OFFICIAL REPORTS

OF

# THE SUPREME COURT

FEBRUARY 22, 2023

Page Proof Pending Publication

REBECCA A. WOMELDORF

REPORTER OF DECISIONS



NOTICE: This preliminary print is subject to formal revision before the bound volume is published.   Users are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D.C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

## BARTENWERFER *v.* BUCKLEY

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR
THE NINTH CIRCUIT

No. 21–908.   Argued December 6, 2022—Decided February 22, 2023

Kate and David Bartenwerfer decided to remodel the house they jointly
owned in San Francisco and to sell it for a profit.   David took charge of
the project, while Kate remained largely uninvolved.   They eventually
sold the house to respondent Kieran Buckley.   In conjunction with the
sale, Kate and David attested that they had disclosed all material facts
related to the property.   After the purchase, Buckley discovered sev-
eral defects that the Bartenwerfers had failed to disclose.   Buckley
sued in California state court and won, leaving the Bartenwerfers
jointly responsible for more than $200,000 in damages.   Unable to pay
that judgment or their other creditors, the Bartenwerfers filed for
Chapter 7 bankruptcy.   Buckley then filed an adversary complaint in
the bankruptcy proceeding, alleging that the debt owed him on the
state-court judgment was nondischargeable under the Bankruptcy
Code's exception to discharge of "any debt . . . for money . . . to the
extent obtained by . . . false pretenses, a false representation, or actual
fraud."   11 U. S. C. §523(a)(2)(A).   The Bankruptcy Court found that
David had committed fraud and imputed his fraudulent intent to Kate
because the two had formed a legal partnership to renovate and sell
the property.   The Bankruptcy Appellate Panel disagreed as to Kate's
culpability, holding that §523(a)(2)(A) barred her from discharging the
debt only if she knew or had reason to know of David's fraud.   On re-
mand, the Bankruptcy Court determined that Kate lacked such knowl-
edge and could therefore discharge her debt to Buckley.   The Bank-
ruptcy Appellate Panel affirmed.   The Ninth Circuit reversed in
relevant part.   Invoking *Strang* v. *Bradner*, 114 U. S. 555, the court held
that a debtor who is liable for her partner's fraud cannot discharge that
debt in bankruptcy, regardless of her own culpability.

*Held*: Section 523(a)(2)(A) precludes Kate Bartenwerfer from discharging
in bankruptcy a debt obtained by fraud, regardless of her own culpabil-
ity.   Pp. 74–83.

   (a) Kate (hereinafter, Bartenwerfer) disputes a straightforward read-
ing of §523(a)(2)(A)'s text.   Bartenwerfer argues that an ordinary Eng-
lish speaker would understand that "money obtained by fraud" means
money obtained by the *individual debtor's* fraud.   This Court dis-
agrees.   The passive voice in §523(a)(2)(A) does not hide the relevant

actor in plain sight, as Bartenwerfer suggests—it removes the actor
altogether.   Congress framed § 523(a)(2)(A) to "focu[s] on an event that
occurs without respect to a specific actor, and therefore without respect
to any actor's intent or culpability."   *Dean* v. *United States*, 556 U. S.
568, 572.   It is true that context can confine a passive-voice sentence to
a likely set of actors.   See, *e. g.*, *E. I. du Pont de Nemours & Co.* v.
*Train*, 430 U. S. 112, 128–129.   But the legal context relevant to § 523(a)
(2)(A)—the common law of fraud—has long maintained that fraud liabil-
ity is *not* limited to the wrongdoer.   Understanding   § 523(a)(2)(A) to
reflect "agnosticism" as to the identity of the wrongdoer is consistent
with the age-old rule of fraud liability.

Bartenwerfer points out that " 'exceptions to discharge should be con-
fined to those plainly expressed.' "   *Bullock* v. *BankChampaign, N. A.*,
569 U. S. 267, 275.   The Court, however, has never used this principle
to artificially narrow ordinary meaning, invoking it instead to stress
that exceptions should not extend beyond their stated terms.   See, *e. g.*,
*Gleason* v. *Thaw*, 236 U. S. 558, 559–562.

Bartenwerfer also seeks support from § 523(a)(2)(A)'s neighboring
provisions in subparagraphs (B) and (C), both of which require some
culpable action by the debtor herself.   Bartenwerfer claims that these
neighboring provisions make explicit what is unstated in (A).   This ar-
gument turns on its head the rule that " '[w]hen Congress includes par-
ticular language in one section . . . but omits it in another section of the
same Act,' " the Court generally takes "the choice to be deliberate."
*Badgerow* v. *Walters*, 596 U. S. ——, ——.   If there is an inference to be
drawn here, the more likely one is that (A) excludes debtor culpability
from consideration given that (B) and (C) expressly hinge on it.   Bar-
tenwerfer suggests it would defy credulity to think that Congress would
bar debtors from discharging liability for fraud they did not personally
commit under (A) while allowing debtors to discharge debt for (poten-
tially more serious) fraudulent statements they did not personally make
under (B).   But the Court offered a possible answer for this disparity
in *Field* v. *Mans*, 516 U. S. 59, 76–77.   Whatever the rationale, it does
not defy credulity to think that Congress established differing rules for
(A) and (B).   Pp. 74–79.

  (b) Any remaining doubt about the textual analysis is eliminated by
this Court's precedent and Congress's response to it.   In *Strang* v.
*Bradner*, 114 U. S. 555, the Court held that the fraud of one partner
should be imputed to the other partners, who "received and appro-
priated the fruits of the fraudulent conduct."   *Id.*, at 561.   The Court
so held despite the fact that the relevant 19th-century discharge excep-
tion for fraud disallowed the discharge of debts "created by the fraud
or embezzlement *of the bankrupt.*"   14 Stat. 533 (emphasis added).

And when Congress next overhauled bankruptcy law, it deleted the phrase "of the bankrupt" from the discharge exception for fraud. The unmistakable implication is that Congress embraced *Strang*'s holding. See *Ysleta del Sur Pueblo* v. *Texas*, 596 U. S. ——, ——. Pp. 79–81.

(c) Finally, Bartenwerfer insists that the preclusion of faultless debtors from discharging liabilities run up by their associates is inconsistent with bankruptcy law's "fresh start" policy. But the Bankruptcy Code is not focused on the unadulterated pursuit of the debtor's interest, and instead seeks to balance multiple, often competing interests. Bartenwerfer's fairness-based critiques also miss the fact that §523(a)(2)(A) does not define the scope of one's liability for another's fraud. Section 523(a)(2)(A) takes the debt as it finds it, so if California did not extend liability to honest partners, §523(a)(2)(A) would have no role here. And while Bartenwerfer paints a picture of liability being imposed on hapless bystanders, fraud liability generally requires a special relationship to the wrongdoer and, even then, defenses to liability are available. Pp. 81–83.

860 Fed. Appx. 544, affirmed.

BARRETT, J., filed an opinion for a unanimous Court. SOTOMAYOR, J., filed a concurring opinion, in which JACKSON, J., joined, *post*, p. 83.

*Sarah M. Harris* argued the cause for petitioner. With her on the briefs were *Lisa S. Blatt, Iain Angus MacDonald, Reno Fernandez,* and *Anna-Rose Mathieson.*

*Zachary D. Tripp* argued the cause for respondent. With him on the brief were *Robert B. Niles-Weed* and *Janet Marie Brayer.*

*Erica L. Ross* argued the cause for the United States. With her on the brief were *Solicitor General Prelogar, Principal Deputy Assistant Attorney General Boynton, Deputy Solicitor General Gannon, Michael S. Raab,* and *Sushma Soni.**

———

*Briefs of *amici curiae* urging reversal were filed for Law Professors by *Peter V. Marchetti*; for the National Consumer Bankruptcy Rights Center et al. by *Tara Twomey* and *Jacob T. Spencer*; for Hon. Judith Fitzgerald et al. by *David R. Kuney*; and for Robert E. Zuckerman by *Kathryn M. Davis.*

A brief of *amici curiae* was filed for Lawrence Ponoroff et al. by *Elaine J. Goldenberg* and *J. Kain Day.*

JUSTICE BARRETT delivered the opinion of the Court.

The Bankruptcy Code strikes a balance between the interests of insolvent debtors and their creditors. It generally allows debtors to discharge all prebankruptcy liabilities, but it makes exceptions when, in Congress's judgment, the creditor's interest in recovering a particular debt outweighs the debtor's interest in a fresh start. One such exception bars debtors from discharging any debt for money "obtained by . . . fraud." 11 U. S. C. §523(a)(2)(A). The provision obviously applies to a debtor who was the fraudster. But sometimes a debtor is liable for fraud that she did not personally commit—for example, deceit practiced by a partner or an agent. We must decide whether the bar extends to this situation too. It does. Written in the passive voice, §523(a)(2)(A) turns on how the money was obtained, not who committed fraud to obtain it.

I

In 2005, Kate Bartenwerfer and her then-boyfriend, David Bartenwerfer, jointly purchased a house in San Francisco. Acting as business partners, the pair decided to remodel the house and sell it at a profit. David took charge of the project. He hired an architect, structural engineer, designer, and general contractor; he monitored their work, reviewed invoices, and signed checks. Kate, on the other hand, was largely uninvolved.

Like many home renovations, the Bartenwerfers' project was bumpier than anticipated. Still, they managed to get the house on the market, and Kieran Buckley bought it. In conjunction with the sale, the Bartenwerfers attested that they had disclosed all material facts relating to the property. Yet after the house was his, Buckley discovered several defects that the Bartenwerfers had not divulged: a leaky roof, defective windows, a missing fire escape, and permit problems. Alleging that he had overpaid in reliance on the Bartenwerfers' misrepresentations, Buckley sued them in Cali-

fornia state court. The jury found in Buckley's favor on his claims for breach of contract, negligence, and nondisclosure of material facts, leaving the Bartenwerfers jointly responsible for more than $200,000 in damages.

The Bartenwerfers were unable to pay Buckley, not to mention their other creditors. Seeking relief, they filed for Chapter 7 bankruptcy, which allows debtors to get a "fresh start" by discharging their debts. *Marrama* v. *Citizens Bank of Mass.*, 549 U. S. 365, 367 (2007) (internal quotation marks omitted). While that sounds like complete relief, there is a catch—not all debts are dischargeable. The Code makes several exceptions to the general rule, including the one at issue in this case: Section 523(a)(2)(A) bars the discharge of "any debt . . . for money . . . to the extent obtained by . . . false pretenses, a false representation, or actual fraud."

Buckley filed an adversary complaint alleging that the money owed on the state-court judgment fell within this exception. After a 2-day bench trial, the Bankruptcy Court decided that neither David nor Kate Bartenwerfer could discharge their debt to Buckley. Based on testimony from the parties, real-estate agents, and contractors, the court found that David had knowingly concealed the house's defects from Buckley. And the court imputed David's fraudulent intent to Kate because the two had formed a legal partnership to execute the renovation and resale project.

The Ninth Circuit's Bankruptcy Appellate Panel agreed as to David's fraudulent intent but disagreed as to Kate's. As the panel saw it, §523(a)(2)(A) barred her from discharging the debt only if she knew or had reason to know of David's fraud. It instructed the Bankruptcy Court to apply that standard on remand, and, after a second bench trial, the court concluded that Kate lacked the requisite knowledge of David's fraud and could therefore discharge her liability to Buckley. This time, the Bankruptcy Appellate Panel affirmed the judgment.

The Ninth Circuit reversed in relevant part. *In re Bartenwerfer*, 860 Fed. Appx. 544 (2021). Invoking our decision in *Strang* v. *Bradner*, 114 U. S. 555 (1885), it held that a debtor who is liable for her partner's fraud cannot discharge that debt in bankruptcy, regardless of her own culpability. 860 Fed. Appx., at 546. Kate thus remained on the hook for her debt to Buckley. *Id.*, at 546–547. We granted certiorari to resolve confusion in the lower courts on the meaning of § 523(a)(2)(A).[1] 596 U. S. —— (2022).

## II

### A

"[W]e start where we always do: with the text of the statute." *Van Buren* v. *United States*, 593 U. S. ——, —— (2021). Section 523(a)(2)(A) states:

> "A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . .
> "(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> "(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

By its terms, this text precludes Kate Bartenwerfer from discharging her liability for the state-court judgment. (From now on, we will refer to Kate as "Bartenwerfer.") First, she is an "individual debtor." Second, the judgment

─────────

[1] See, *e. g.*, *In re M.M. Winkler & Assoc.*, 239 F. 3d 746, 749 (CA5 2001) (debts that arise from fraud cannot be discharged); *In re Ledford*, 970 F. 2d 1556, 1561 (CA6 1992) (no discharge if the debtor benefited from the fraud); *Sullivan* v. *Glenn*, 782 F. 3d 378, 381 (CA7 2015) (a debt is nondischargeable only if the debtor knew or should have known of the fraud); *In re Walker*, 726 F. 2d 452, 454 (CA8 1984) (same); *In re Villa*, 261 F. 3d 1148, 1151 (CA11 2001) (a debt cannot be discharged when fraud is imputed to the debtor under agency principles).

is a "debt." And third, because the debt arises from the sale proceeds obtained by David's fraudulent misrepresentations, it is a debt "for money . . . obtained by . . . false pretenses, a false representation, or actual fraud."

Bartenwerfer disputes the third premise. She admits that, as a grammatical matter, the passive-voice statute does not specify a fraudulent actor. But in her view, the statute is most naturally read to bar the discharge of debts for money obtained by *the debtor's* fraud.[2] To illustrate, she offers the sentence "Jane's clerkship was obtained through hard work." According to Bartenwerfer, an ordinary English speaker would understand this sentence to mean that *Jane's* hard work led to her clerkship. Brief for Petitioner 20. Section 523(a)(2)(A) supposedly operates the same way: An ordinary English speaker would understand that "money obtained by fraud" means money obtained by the *individual debtor's* fraud. Passive voice hides the relevant actor in plain sight.

We disagree: Passive voice pulls the actor off the stage. At least on its face, Bartenwerfer's sentence conveys only that *someone's* hard work led to Jane's clerkship—whether that be Jane herself, the professor who wrote a last-minute letter of recommendation, or the counselor who collated the application materials. Section 523(a)(2)(A) is similarly broad. Congress framed it to "focu[s] on an event that occurs without respect to a specific actor, and therefore with-

―――――――

[2] Buckley contends that Bartenwerfer has forfeited this argument because in her petition for a writ of certiorari and in the lower courts, she asserted that §523(a)(2)(A) bars discharge when the debtor "knew or should have known" of her partner's fraud. We disagree. The question presented is whether a debtor can be "subject to liability for the fraud of another that is barred from discharge in bankruptcy . . . without any act, omission, intent or knowledge of her own." Pet. for Cert. i. Bartenwerfer's current argument—that the debt must arise from the debtor's own fraud—is "fairly included" within that question and her position in the lower courts. Supreme Court Rule 14.1(a); *Yee* v. *Escondido*, 503 U. S. 519, 534 (1992).

out respect to any actor's intent or culpability." *Dean* v. *United States*, 556 U. S. 568, 572 (2009); B. Garner, Modern English Usage 676 (4th ed. 2016) (the passive voice signifies that "the actor is unimportant" or "unknown"). The debt must result from someone's fraud, but Congress was "agnosti[c]" about who committed it. *Watson* v. *United States*, 552 U. S. 74, 81 (2007).

It is true, of course, that context can confine a passive-voice sentence to a likely set of actors. *E. I. du Pont de Nemours & Co.* v. *Train*, 430 U. S. 112, 128–129 (1977). If the dean of the law school delivers Bartenwerfer's hypothetical statement to Jane's parents, the most natural implication is that Jane's hard work led to the clerkship. But in the fraud-discharge exception, context does not single out the wrongdoer as the relevant actor. Quite the opposite: The relevant legal context—the common law of fraud—has long maintained that fraud liability is *not* limited to the wrongdoer. *Field* v. *Mans*, 516 U. S. 59, 70–75 (1995) (interpreting §523(a)(2)(A) with reference to the common law of fraud). For instance, courts have traditionally held principals liable for the frauds of their agents. *McCord* v. *Western Union Telegraph Co.*, 39 Minn. 181, 185, 39 N. W. 315, 317 (1888); *Tome* v. *Parkersburg Branch R. Co.*, 39 Md. 36, 70–71 (1873); *White* v. *Sawyer*, 82 Mass. 586, 589 (1860); J. Story, Commentaries on the Law of Agency 465–467 (1839). They have also held individuals liable for the frauds committed by their partners within the scope of the partnership. *Tucker* v. *Cole*, 54 Wis. 539, 540–541, 11 N. W. 703, 703–704 (1882); *Alexander* v. *State*, 56 Ga. 478, 491–493 (1876); *Chester* v. *Dickerson*, 54 N. Y. 1, 11 (1873); J. Story, Commentaries on the Law of Partnership 161, 257–259 (1841). Understanding §523(a)(2)(A) to reflect the passive voice's usual "agnosticism" is thus consistent with the age-old rule that individual debtors can be liable for fraudulent schemes they did not devise.

Opinion of the Court

Searching for a way to defeat the natural breadth of the passive voice, Bartenwerfer points to our observation that "'exceptions to discharge "should be confined to those plainly expressed."'" *Bullock* v. *BankChampaign, N. A.*, 569 U. S. 267, 275 (2013) (quoting *Kawaauhau* v. *Geiger*, 523 U. S. 57, 62 (1998)). This does not get her far. We have never used this principle to artificially narrow ordinary meaning, which is what Bartenwerfer asks us to do. Instead, we have invoked it to stress that exceptions should not extend beyond their stated terms. In *Gleason* v. *Thaw*, we held that "liabilities for obtaining property" did not include an attorney's services because services are not property. 236 U. S. 558, 559–562 (1915). In *Kawaauhau*, we concluded that medical malpractice attributable to negligence or recklessness did not amount to a "willful and malicious injury." 523 U. S., at 59. And in *Bullock*, interpreting the discharge exception "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny," we applied the familiar *noscitur a sociis* canon to hold that the term "defalcation" possessed a *mens rea* requirement akin to those of "fraud," "embezzlement," and "larceny." 569 U. S., at 269, 274–275. In each case, we reached a result that was "plainly expressed" by the text and ordinary tools of interpretation. Our interpretation in this case, which rests on basic tenets of grammar, is more of the same.

Bartenwerfer also seeks support from § 523(a)(2)(A)'s neighboring provisions, which both require action by the debtor herself. Section 523(a)(2)(B) bars the discharge of debts arising from the "use of a statement in writing—(i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable . . . reasonably relied; and (iv) that *the debtor caused to be made or published with intent to deceive*." (Emphasis added.) Similarly, § 523(a)(2)(C) presumptively bars the discharge of recently acquired "con-

sumer debts owed to a single creditor and aggregating more than $500 for luxury goods or services *incurred by an individual debtor*" and "cash advances aggregating more than $750 . . . *obtained by an individual debtor.*" § 523(a)(2)(C)(i) (footnote omitted; emphasis added). Unlike subparagraph (A), the discharge exceptions in subparagraphs (B) and (C) expressly require some culpable act on the part of the debtor. According to Bartenwerfer, these provisions make explicit what goes without saying in (A): The debtor's own fraud must have given rise to the debt.

This argument flips the rule that "'[w]hen Congress includes particular language in one section of a statute but omits it in another section of the same Act,' we generally take the choice to be deliberate." *Badgerow* v. *Walters*, 596 U. S. ——, —— (2022) (quoting *Collins* v. *Yellen*, 594 U. S. ——, —— (2021)). As the word "generally" indicates, this rule is not absolute. Context counts, and it is sometimes difficult to read much into the absence of a word that is present elsewhere in a statute. See, *e. g., Field*, 516 U. S., at 67–69. But if there is an inference to be drawn here, it is not the one that Bartenwerfer suggests. The more likely inference is that (A) excludes debtor culpability from consideration given that (B) and (C) expressly hinge on it.

Bartenwerfer retorts that it would have made no sense for Congress to set up such a dichotomy, particularly between (A) and (B). These two provisions are linked: (A) carves out fraudulent "statement[s] respecting the debtor's or an insider's financial condition," while (B) governs such statements that are reduced to writing. In Bartenwerfer's view, it "defies credulity" to think that Congress would bar debtors from discharging liability for mine-run fraud they did not personally commit while simultaneously allowing debtors to discharge liability for (potentially more serious) fraudulent statements they did not personally make. Brief for Petitioner 23.

But in *Field*, we offered a possible answer for why (B) contains a more debtor-friendly discharge rule than (A): Congress may have "wanted to moderate the burden on individuals who submitted false financial statements, not because lies about financial condition are less blameworthy than others, but because the relative equities might be affected by practices of consumer finance companies, which sometimes have encouraged such falsity by their borrowers for the very purpose of insulating their own claims from discharge." 516 U. S., at 76–77. This concern may also have informed Congress's decision to limit (B)'s prohibition on discharge to fraudulent conduct by the debtor herself. Whatever the rationale, it does not "def[y] credulity" to think that Congress established differing rules for (A) and (B). Brief for Petitioner 23.

B

Our precedent, along with Congress's response to it, eliminates any possible doubt about our textual analysis. In the late 19th century, the discharge exception for fraud read as follows: "[N]o debt created by the fraud or embezzlement *of the bankrupt . . .* shall be discharged under this act." Act of Mar. 2, 1867, §33, 14 Stat. 533 (emphasis added). This language seemed to limit the exception to fraud committed by the debtor herself—the position that Bartenwerfer advocates here.

But we held otherwise in *Strang* v. *Bradner*. In that case, the business partner of John and Joseph Holland lied to fellow merchants in order to secure promissory notes for the benefit of their partnership. 114 U. S., at 557–558. After a state court held all three partners liable for fraud, the Hollands tried to discharge their debts in bankruptcy on the ground that their partner's misrepresentations "were not made by their direction nor with their knowledge." *Id.*, at 557, 561. Even though the statute required the debt to be created by the fraud "of the bankrupt," we held that the

Hollands could not discharge their debts to the deceived merchants. *Id.*, at 561. The fraud of one partner, we explained, is the fraud of all because "[e]ach partner was the agent and representative of the firm with reference to all business within the scope of the partnership." *Ibid.* And the reason for this rule was particularly easy to see because "the partners, who were not themselves guilty of wrong, received and appropriated the fruits of the fraudulent conduct of their associate in business." *Ibid.*

The next development—Congress's post-*Strang* legislation—is the linchpin.[3] "This Court generally assumes that, when Congress enacts statutes, it is aware of this Court's relevant precedents." *Ysleta del Sur Pueblo* v. *Texas*, 596 U. S. ——, —— (2022). Section 523(a)(2) is no exception to this interpretive rule. *Lamar, Archer & Cofrin, LLP* v. *Appling*, 584 U. S. ——, —— – —— (2018). So if Congress had reenacted the discharge exception for fraud without change, we would assume that it meant to incorporate *Strang*'s interpretation. *Appling*, 584 U. S., at —— – ——; *Lorillard* v. *Pons*, 434 U. S. 575, 580 (1978).

But Congress went even further than mere reenactment. Thirteen years after *Strang*, when Congress next overhauled bankruptcy law, it deleted "of the bankrupt" from the discharge exception for fraud, which is the predecessor to the modern § 523(a)(2)(A). Act of July 1, 1898, § 17, 30 Stat. 550 ("A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as . . . are judgments in actions for frauds, or obtaining property by false pretenses or false representations, or for willful and malicious

_____

[3] Bartenwerfer asserts that we should ignore *Strang* because, as a product of the *Swift* v. *Tyson* era, it turned on the Court's understanding of the general common-law rule rather than its interpretation of the statutory text. 16 Pet. 1 (1842). This argument is a detour we need not take. Whatever *Strang*'s rationale, it constituted an important part of the background against which Congress drafted the current discharge exception for fraud.

injuries to the person or property of another"). By doing so, Congress cut from the statute the strongest textual hook counseling against the outcome in *Strang*. The unmistakable implication is that Congress embraced *Strang*'s holding—so we do too.

C

In a last-ditch effort to persuade us, Bartenwerfer invokes the "fresh start" policy of modern bankruptcy law. Precluding faultless debtors from discharging liabilities run up by their associates, she says, is inconsistent with that policy, so § 523(a)(2)(A) cannot apply to her. A contrary holding would be a throwback to the harsh days when "debtors faced 'perpetual bondage to their creditors,' surviving on 'a miserable pittance [and] dependent upon the bounty or forbearance of [their] creditors.'" Brief for Petitioner 16 (quoting 3 J. Story, Commentaries on the Constitution of the United States 5 (1833)). The same Congress that "champion[ed]" the fresh start could not also have shackled honest debtors with liability for frauds that they did not personally commit. Brief for Petitioner 37.

This argument earns credit for color but not much else. To begin, it characterizes the Bankruptcy Code as focused on the unadulterated pursuit of the debtor's interest. But the Code, like all statutes, balances multiple, often competing interests. Section 523 is a case in point: Barring certain debts from discharge necessarily reflects aims distinct from wiping the bankrupt's slate clean. Perhaps Congress concluded that these debts involved particularly deserving creditors, particularly undeserving debtors, or both. Regardless, if a fresh start were all that mattered, § 523 would not exist. No statute pursues a single policy at all costs, and we are not free to rewrite this statute (or any other) as if it did. *Azar* v. *Allina Health Services*, 587 U. S. ——, —— (2019).

It also bears emphasis—because the thread is easily lost in Bartenwerfer's argument—that § 523(a)(2)(A) does not de-

fine the scope of one person's liability for another's fraud. That is the function of the underlying law—here, the law of California. Section 523(a)(2)(A) takes the debt as it finds it, so if California did not extend liability to honest partners, §523(a)(2)(A) would have no role to play. Bartenwerfer's fairness-based critiques seem better directed toward the state law that imposed the obligation on her in the first place.

And while Bartenwerfer paints a picture of liability imposed willy-nilly on hapless bystanders, the law of fraud does not work that way. Ordinarily, a faultless individual is responsible for another's debt only when the two have a special relationship, and even then, defenses to liability are available. For instance, though an employer is generally accountable for the wrongdoing of an employee, he usually can escape liability if he proves that the employee's action was committed outside the scope of employment. Restatement (Third) of Agency §7.07 (2006); D. Dobbs, P. Hayden, & E. Bublick, Law of Torts §425 (2022). Similarly, if one partner takes a wrongful act without authority or outside the ordinary course of business, then the partnership—and by extension, the innocent partners—are generally not on the hook. Uniform Partnership Act §305 (2013). Partnerships and other businesses can also organize as limited-liability entities, which insulate individuals from personal exposure to the business's debts. See, *e. g.*, §306(c) (limited-liability partnerships); Uniform Limited Partnership Act §303(a) (2013) (limited partnerships); Uniform Limited Liability Company Act §304(a) (2013) (limited-liability companies).

Individuals who themselves are victims of fraud are also likely to have defenses to liability. If a surety or guarantor is duped into assuming secondary liability, then his obligation is typically voidable. Law of Suretyship and Guaranty §6:8 (2022); Restatement (Third) of Suretyship & Guaranty §12 (1996). Likewise, if a purchaser unwittingly contracts for fraudulently obtained property, he may be able to rescind the agreement. 27 R. Lord, Williston on Contracts §69:47

(4th ed. 2022). Thus, victims have a variety of antecedent defenses at their disposal that, if successful, protect them from acquiring any debt to discharge in a later bankruptcy proceeding.

All of this said, innocent people are sometimes held liable for fraud they did not personally commit, and, if they declare bankruptcy, § 523(a)(2)(A) bars discharge of that debt. So it is for Bartenwerfer, and we are sensitive to the hardship she faces. But Congress has "evidently concluded that the creditors' interest in recovering full payment of debts" obtained by fraud "outweigh[s] the debtors' interest in a complete fresh start," *Grogan* v. *Garner*, 498 U. S. 279, 287 (1991), and it is not our role to second-guess that judgment.

## III

We affirm the Ninth Circuit's judgment that Kate Bartenwerfer's debt is not dischargeable in bankruptcy.

*It is so ordered.*

JUSTICE SOTOMAYOR, with whom JUSTICE JACKSON joins, concurring.

The Court correctly holds that 11 U. S. C. § 523(a)(2)(A) bars debtors from discharging a debt obtained by fraud of the debtor's agent or partner. Congress incorporated into the statute the common-law principles of fraud, *Husky Int'l Electronics, Inc.* v. *Ritz*, 578 U. S. 356, 360 (2016) (citing *Field* v. *Mans*, 516 U. S. 59, 69 (1995)), which include agency and partnership principles, *ante*, at 76. This Court long ago confirmed that reading when it held that fraudulent debts obtained by partners are not dischargeable, *Strang* v. *Bradner*, 114 U. S. 555, 559–561 (1885), and Congress "embraced" that reading when it amended the statute in 1898, *ante*, at 81.

The Bankruptcy Court found that petitioner and her husband had an agency relationship and obtained the debt at

issue after they formed a partnership. Because petitioner does not dispute that she and her husband acted as partners, the debt is not dischargeable under the statute.

The Court here does not confront a situation involving fraud by a person bearing no agency or partnership relationship to the debtor. Instead, "[t]he relevant legal context" concerns fraud only by "agents" and "partners within the scope of the partnership." *Ante*, at 76. With that understanding, I join the Court's opinion.

Page Proof Pending Publication

## Reporter's Note

The attached opinion has been revised to reflect the usual publication and citation style of the United States Reports. The revised pagination makes available the official United States Reports citation in advance of publication. The syllabus has been prepared by the Reporter of Decisions for the convenience of the reader and constitutes no part of the opinion of the Court. A list of counsel who argued or filed briefs in this case, and who were members of the bar of this Court at the time this case was argued, has been inserted following the syllabus. Other revisions may include adjustments to formatting, captions, citation form, and any errant punctuation. The following additional edits were made:

None