**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2037
_____

STEPHANIE MURRIN,
Appellant

v.

COMMISSIONER OF INTERNAL REVENUE
_____

On Appeal from the United States Tax Court
U.S. Tax Court No. 19-14614
Tax Court Judge: Patrick J. Urda
_____

Argued: April 30, 2025

Before: KRAUSE, BIBAS, and MONTGOMERY-REEVES,
*Circuit Judges*.

(Filed: October 17, 2025)

Michael A. Guariglia
McCarter & English
2 Tower Center Boulevard
24th Floor
East Brunswick, NJ 08816

Lawrence A. Sannicandro, Jr.      **[ARGUED]**
Pillsbury Winthrop Shaw & Pittman
31 W 52nd Street
New York, NY 10036

   *Counsel for Appellant Stephanie Murrin*

Bryan Camp
Texas Tech University School of Law

3311 18th Street
Mail Stop 0004
Lubbock, TX 79416

*Amicus Bryan Camp in Support of Appellant*

Caroline D. Ciraolo
Michael Waalkes
Kostelanetz
601 New Jersey Avenue NW
Suite 260
Washington, DC 20001

*Counsel for Amicus American College of Tax Counsel
in Support of Appellant*

Jacob E. Christensen          **[ARGUED]**
United States Department of Justice
Civil Division, Appellate
Room 7525
950 Pennsylvania Avenue NW
Washington, DC 20530

Anthony T. Sheehan
United States Department of Justice
Tax Division
950 Pennsylvania Avenue NW
P.O. Box 502
Washington, DC 20044

*Counsel for Appellee Commissioner of Internal
Revenue*

_____

OPINION OF THE COURT
_____

MONTGOMERY-REEVES, *Circuit Judge.*

Typically, the Internal Revenue Service ("IRS") must assess tax within three years from the date an individual

taxpayer files her return. I.R.C. § 6501(a).[1] An exception to this statute of limitations exists, however. When there is "a false or fraudulent return with the intent to evade tax," the IRS can assess tax "at any time." *Id.* § 6501(c)(1). But whose "intent" is required for this exception to the statute of limitations to apply? That is the subject of this appeal. Appellant Stephanie Murrin argues that only the taxpayer's intent matters. That is, the exception applies only if the taxpayer *herself* intends to evade tax. And because Murrin's *tax preparer* prepared her taxes with an intent to evade tax while she did not, the exception to the statute of limitations does not apply. We understand Murrin's frustration with the IRS's decision to assess tax beyond the statute of limitations due to the wrongdoing of someone other than her. But we are bound by the statute. And because the statute is agnostic about who must intend to evade tax, we hold that taxpayer intent is not required. Thus, we will affirm the judgment of the Tax Court.

## I.   BACKGROUND

The material facts in this appeal are undisputed. Murrin underpaid her taxes from 1993 to 1999 because her tax preparer, Duane Howell, placed false or fraudulent entries on Murrin's tax returns with an intent to evade tax. But Murrin did not cause the false or fraudulent entries, and she did not intend to evade tax.

Over 20 years later, in 2019, the IRS issued a notice of deficiency to Murrin regarding underpayments on her tax returns between 1993 and 1999. *Id.* § 6212(a). Murrin filed a petition in the Tax Court for a redetermination of the deficiency. *Id.* § 6213(a). Murrin agreed with the IRS that she underpaid $65,318 in tax, and she did not dispute the application of an accuracy-related penalty of $13,064 for the underpayment. Instead, Murrin argued that the IRS did not act within the three-year statute of limitations. The Tax Court held that § 6501(c)(1) applies because Howell prepared Murrin's false or fraudulent tax returns with an intent to evade tax, and

---

[1] The "Code" refers to the Internal Revenue Code. *See* 26 U.S.C. § 1 *et seq.*

thus the statute of limitations under § 6501(a) did not bar the IRS's notice of deficiency. Murrin appealed.

## II.    JURISDICTION AND STANDARD OF REVIEW

The Tax Court had jurisdiction under I.R.C. §§ 6213(a) and 7442. We have jurisdiction under I.R.C. § 7482(a)(1). We exercise de novo review over the Tax Court's interpretation of the Code. *Sunoco Inc. v. Comm'r*, 663 F.3d 181, 185 (3d Cir. 2011).

## III.    DISCUSSION

This appeal turns on our interpretation of § 6501. Section 6501(a) states that "any tax imposed by [the Code] shall be assessed within 3 years after the return was filed"— that is, three years from the filing of "the return required to be filed by the taxpayer." Subsection (c) then includes twelve exceptions to the three-year statute of limitations, one of which is relevant here. Section 6501(c)(1) provides, in full, that "[i]n the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time."[2] To determine whether taxpayer intent is necessary to trigger the indefinite limitations period in § 6501(c)(1), we

_____

[2]    Section 6501(c)(1) keys the statute of limitations to "assessment." A tax assessment is simply "what the taxpayer is required to pay the Government." *Soni v. Comm'r*, 76 F.4th 49, 54 n.1 (2d Cir. 2023) (quoting *Chai v. Comm'r*, 851 F.3d 190, 218 (2d Cir. 2017)). In other words, assessment operates as a judgment against the taxpayer. *United States v. Farnsworth*, 456 F.3d 394, 396 n.1 (3d Cir. 2006). But before assessment, the IRS must first issue a notice of deficiency to the taxpayer that tells the taxpayer what the IRS believes is owed. I.R.C. §§ 6212(a), 6213(a). Once a taxpayer, like Murrin, receives a notice of deficiency, she can challenge the IRS's position in the Tax Court. *Id.* § 6213(a). Only when the taxpayer does not petition the Tax Court for a redetermination, or when the taxpayer does so and the Tax Court's judgment becomes final, may the IRS issue a tax assessment. *Id.* In the meantime, the IRS's mailing of a notice of deficiency tolls the statute of limitations. *Id.* § 6503(a).

examine (1) the text of § 6501(c)(1), (2) the statutory context of § 6501(c)(1), and (3) relevant precedent. All three reveal that § 6501(c)(1) is not limited to a taxpayer's intent. We address each in turn.

### A. Section 6501(c)(1)'s Plain Text Applies to More Than Taxpayers

"Our analysis begins with the statutory text." *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 168 (2014) (citing *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013)). "We give the words of a statute their 'ordinary, contemporary, common meaning,' absent an indication Congress intended them to bear some different import." *Williams v. Taylor*, 529 U.S. 420, 431 (2000) (quoting *Walters v. Metro. Ed. Enters., Inc.*, 519 U.S. 202, 207 (1997)). "The ordinary or natural meaning may be determined by looking to dictionary definitions while keeping in mind the whole statutory text, the purpose, and context of the statute, and relevant precedent." *United States v. Brow*, 62 F.4th 114, 120 (3d Cir. 2023).[3] "We also are mindful that '[t]here is no canon against using common sense in construing laws as saying what they obviously mean.'" *United States v. Lucidonio*, 137 F.4th 177, 183 (3d Cir. 2025) (alteration in original) (quoting *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 63 (2004)).

Again, the question before us is whether the "intent to evade tax" exception in § 6501(c)(1) requires taxpayer intent. We conclude that it does not. Absent from § 6501(c)(1) is any express or implied textual indication that the "intent to evade tax" is cabined to the taxpayer. The structure of the statute focuses on the presence of "a false or fraudulent return with the intent to evade tax." I.R.C. § 6501(c)(1). That is, an "intent to

---

[3] "[O]ur job is to interpret the words consistent with their 'ordinary meaning . . . at the time Congress enacted the statute.'" *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 277 (2018) (alteration in original) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). Because § 6501(c)(1) dates to 1918, we discuss definitions contemporaneous to that period. *See infra* III.B. (discussing § 6501(c)(1)'s origin in the Revenue Act of 1918).

evade tax" must attach to the "false or fraudulent return."[4] But neither requirement facially includes any indication that the taxpayer must be the actor who intends to evade tax.

First, the plain and ordinary meaning of the phrase "intent to evade tax" reveals no taxpayer-only limitation. Neither "intent" nor "to evade" cabin the phrase "intent to evade tax" to a taxpayer because nothing about either term is restricted to certain individuals.[5] The only constituent part of "intent to evade tax" that does bear a connection to taxpayers is the term "tax." That is because "tax[es]" are "portions of the property of the citizen, demanded and received by the government, to be disposed of to enable it to discharge its functions." *Tax*, Black's Law Dictionary (2d ed. 1910); *see Tax*, Webster's Home, School, and Office Dictionary (1916) ("[A] rate or duty on income or property[.]"). As a result, taxes

---

[4] Section 6501(c)(1)'s two requirements are joined by "with," establishing that "the intent to evade tax" must join the "false or fraudulent return." *See, e.g.*, *With*, Concise Oxford Dictionary of Current English (7th ed. 1919) (explaining that "with" is a preposition meaning, among other things, "having, carrying, possessed of, characterized by"); *see also With*, Webster's Home, School, and Office Dictionary (1916) ("[D]enoting nearness or connection.").

[5] "Intent" refers to a "[p]urpose; formulated design; a resolve to do or forbear a particular act; aim; determination." *Intent*, Black's Law Dictionary (2d ed. 1910). Said otherwise, "intent" is "the exercise of intelligent will, the mind being fully aware of the nature and consequences of the act which is about to be done, and with such knowledge, and with full liberty of action, willing and electing to do it." *Id.* *Accord Intent*, Concise Oxford Dictionary of Current English (7th ed. 1919) ("Intention, purpose, esp. with [intent] to defraud [et]c." (cleaned up)); *Intent*, Webster's Home, School, and Office Dictionary (1916) (explaining that, when used as a noun, "intent" means "purpose; aim"). Evade means to "escape" or "avoid." *Evade*, Concise Oxford Dictionary of Current English (7th ed. 1919); *Evade*, Webster's Home, School, and Office Dictionary (1916); *cf. Evasion*, Black's Law Dictionary (2d ed. 1910) ("A subtle endeavoring to set aside truth or to escape the punishment of the law.").

refer to duties necessarily owed by an individual or entity. *See Tax*, Concise Oxford Dictionary of Current English (7th ed. 1919) ("Contribution levied on persons, property, or business, for support of government[.]"). But reading the whole phrase together, an "intent to evade tax" means that *someone* planned to avoid duties owed by an individual or entity to the Government. So, while an "intent to evade" does concern the taxes a taxpayer owes, the plain meaning of the words does not imply a specific actor.

Second, Congress's decision to use passive voice in § 6501(c)(1) further evinces that the statute does not depend on a taxpayer's intent. Congress drafted § 6501(c)(1) by focusing "on an event that occurs without respect to a specific actor, and therefore without respect to any [specific] actor's intent or culpability." *Dean v. United States*, 556 U.S. 568, 572 (2009). And by wording it this way, without listing who must intend to evade tax, "Congress was agnostic about who" did so. *Bartenwerfer v. Buckley*, 598 U.S. 69, 76 (2023) (cleaned up) (quoting *Watson v. United States*, 552 U.S. 74, 81 (2007)).[6]

Murrin responds with a few textual arguments. We begin with the strongest—that because the tax evaded is that owed by the taxpayer, the plainest reading of "intent to evade tax" must refer to a taxpayer's conduct. Any other reading, Murrin stresses, would unnaturally interpret the statute contrary to any commonsense interpretation of it. *Cf. United States v. Fontaine*, 697 F.3d 221, 228 (3d Cir. 2012) (explaining that "we should 'presume[] that the legislature intended exceptions to its language, which would avoid [absurd]' results" (alterations in original) (quoting *Gov't of the V.I. v. Berry*, 604 F.2d 221, 225 (3d Cir. 1979))). This is because the "plainest reading of section 6501(c)(1) is that the statute refers to the intent of the person with the legal duty to file the tax return and pay the tax: the taxpayer." Opening Br. 24.

---

[6] "It is true, of course, that context can confine a passive-voice sentence to a likely set of actors." *Bartenwerfer*, 598 U.S. at 76. But as we explain below, context here confirms that Congress's use of passive voice in § 6501(c)(1) was purposeful. *See infra*.

Murrin's argument is a fair one. And it certainly is true that § 6501(c)(1) applies when a taxpayer intends to evade tax. That much is beyond debate. But the plainest and most straightforward reading of § 6501(c)(1) is that it simply requires an "intent to evade tax" attached to a "false or fraudulent return," and whether a taxpayer, accountant, lawyer, or tax preparer evinced such intent is beside the point. And while Murrin contends such a view is nonsensical, the Code establishes that Congress knows how to limit statutes to taxpayers when it intends to do so. *See infra* III.B. (detailing why §§ 6161(b)(3), 6663(c), 6664(c)(1), and 7454(a) establish this conclusion). That only strengthens our bottom-line view that were § 6501(c)(1) limited to a taxpayer's intent, we would expect to see evidence of that in the statute.

Next, Murrin contends that because § 6501(a) explains that the "return" at issue is the taxpayer's, "the fraudulent intent referenced in section 6501(c)(1) is by implication limited to fraud by the taxpayer." Opening Br. 23–24. Not so. As the Tax Court explained, "[t]he specification of whose tax or return is at issue does not suggest, much less dictate, who had to intend to evade tax." App. 10. Moreover, Congress expressly used the term "taxpayer" in § 6501(a) to define what return is at issue but declined to use the same qualifier in § 6501(c)(1). And "[w]hen Congress includes particular language in one section of a statute but omits it from a neighbor, we normally understand that difference in language to convey a difference in meaning." *Bittner v. United States*, 598 U.S. 85, 94 (2023).

Murrin also argues that the Tax Court's interpretation focuses only on the "false or fraudulent return" and thus renders "intent to evade tax" superfluous. We recognize that we must "give effect, if possible, to every clause and word of a statute," but our interpretation of § 6501(c)(1) renders nothing superfluous in this statute. *Montclair Twp. v. Ramsdell*, 107 U.S. 147, 152 (1883); *see also Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 299 n.1 (2006) ("[I]t is generally presumed that statutory language is not superfluous."). As the Tax Court correctly explained, "[t]he obvious construction of the statutory text is that the intent to evade tax must be present in a false or fraudulent return, irrespective of who possesses that intent." App. 10 (quoting

8

*BASR P'ship v. United States*, 795 F.3d 1338, 1358 (Fed. Cir. 2015) (Prost, C.J., dissenting)). But that construction of § 6501(c)(1) still requires an act (a "false or fraudulent return") and a mental state ("with the intent to evade tax"). As a result, we fail to see why our interpretation of § 6501(c)(1) somehow excises "the intent to evade tax" from the statute.[7]

### B. Section 6501(c)(1)'s Statutory Context Shows That Congress Knows How to Limit Statutes to Taxpayers but Did Not Do So Here

We turn next to the statutory context of § 6501(c)(1). "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *West Virginia v. EPA*, 597 U.S. 697, 721 (2022) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)); *see also Davis*, 489 U.S. at 809 ("[S]tatutory language cannot be construed in a vacuum."). And the statutory context shows that Congress knows how to limit statutes to taxpayer conduct when it wants to do so. For example, § 6663(a) authorizes the IRS to impose a fraud penalty when "any part of any underpayment of tax required to be shown on a return is due to fraud." I.R.C. § 6663(a). But the fraud penalty does not apply when "the taxpayer acted in good faith" and had "reasonable cause." *Id.* § 6664(c)(1). Nor does it apply for a joint return filed by a

---

[7] We pause to mention Murrin's remaining argument that is adjacent to § 6501(c)(1)'s text—that our interpretation is unworkable. By not limiting § 6501(c)(1) to a taxpayer's intent, Murrin argues that we would offend basic due process and fairness principles by not defining whose intent might matter. We need not determine the outer bounds of how an "intent to evade tax" applies in every context, however, because Murrin stipulated that her tax preparer intended to evade her taxes. But to the extent that Murrin suggests that courts are simply unable to address whether other third parties' intent to evade tax can trigger § 6501(c)(1), the Tax Court has proven capable of doing so. *See, e.g.*, *Browning v. Comm'r*, 102 T.C.M. (CCH) 460, at *13–16 (2011) (conducting a detailed factual finding separately as to a taxpayer and his accountant for purposes of whether § 6501(c)(1) applied to the taxpayer).

married couple "unless some part of the underpayment is due to the fraud of such spouse." *Id.* § 6663(c). And "[i]n any proceeding involving the issue whether the petitioner [that is, the taxpayer] has been guilty of fraud with intent to evade tax," Congress required the IRS to carry the burden of proof on that issue. *Id.* § 7454(a).

A few important lessons flow from the Code's fraud provisions in §§ 6663, 6664, and 7454. The first is that the fraud penalty in § 6663(a) simply says it applies when an underpayment is "due to fraud," but Congress's express reference to a taxpayer's conduct three times in §§ 6663(c), 6664(c)(1), and 7454(a) make clear that the "fraud" in § 6663(a) refers to that of a taxpayer and not a third party's fraud. Missing from the "intent to evade tax" in § 6501(c)(1) is any such contextual limitation, confirming that "intend to evade tax" includes no implied limitation. The second is that §§ 6663(c), 6664(c)(1), and 7454(a) demonstrate Congress's knowledge about how to limit statutes to taxpayers.[8] As a result, we find it difficult to believe that despite Congress limiting provisions elsewhere by reference to a taxpayer's conduct or allegations directed against the taxpayer, Congress included a limitation within "a false or fraudulent return with the intent to evade tax" despite not saying so. *Id.* § 6501(c)(1).

Murrin disagrees with our view of the Code for two reasons, but neither persuades. First, Murrin contends that the fraud penalty under § 6663(a) cuts against our interpretation. Because "due to fraud" in § 6663(a) and "intent to evade tax" in § 6501(c)(1) both are written in the passive voice, Murrin suggests that § 6663(a)'s limitation to a taxpayer's conduct must carry over to § 6501(c)(1). As support, Murrin explains that both provisions date to the Revenue Act of 1918, and in that Act the phrase "intent to evade tax" described both the fraud penalty and statute-of-limitations exception. *See* Revenue Act of 1918, Pub. L. No. 65-254, §§ 250(b), 40 Stat. 1057, 1083 (applying fraud penalty when an "understatement is false or fraudulent with intent to evade the tax"); *id.* § 250(d),

---

[8] Congress likewise knows how to limit statutes to third parties like tax preparers. *See, e.g.*, I.R.C. § 6694(a) (penalizing tax preparers for, among other things, taking unreasonable tax positions).

40 Stat. at 1083 (applying exception to statute of limitations "in the case of false or fraudulent returns with intent to evade the tax").

Murrin's argument implicates the statutory canon of construction of *in pari materia*—the axiom that "a legislative body generally uses a particular word with a consistent meaning in a given context." *Erlenbaugh v. United States*, 409 U.S. 239, 243 (1972). But identical words "may be variously construed, not only when they occur in different statutes, but when used more than once in the same statute or even in the same section." *Env't Def. v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007) (quoting *Atl. Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932)). "Thus, the 'natural presumption that identical words used in different parts of the same act are intended to have the same meaning'" is not inexorable, and it "readily yields whenever there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent.'" *Id.* (quoting *Atl. Cleaners & Dyers, Inc.*, 286 U.S. at 433).

Looking past the fact that the modern-day fraud penalty differs in text from the historical analogue, Murrin points to the Revenue Act of 1918, which includes the same contextual limitations present in the Code today. Section 250(b), housing the fraud penalty now codified as § 6663(a), included various limitations that referenced taxpayers, their actions, and intent, but § 250(d), housing the statute-of-limitations exception now codified as § 6501(c)(1), did not. *See* Revenue Act of 1918, Pub. L. No. 65-254, § 250(b), 40 Stat. 1057, 1083 (exempting application of fraud penalty "if the return is made in good faith and the understatement of the amount in the return is not due to any fault of the taxpayer" or imposing a smaller penalty for understatements "due to negligence on the part of the taxpayer, but without intent to defraud"). Thus, Murrin's emphasis on history only proves the same point reached by reference to the Code. Congress has never limited the scope of the statute-of-limitations exception despite doing so in the fraud penalty.[9]

---

[9] Murrin makes the same argument related to § 7454(a), which shifts the burden of proof to the IRS when it alleges "the petitioner [that is, the taxpayer] has been guilty of fraud with

Second, Murrin points to another provision, § 6161(b)(3), as support for why our interpretation is incongruous with the Code. That provision disallows extensions of time for payments of tax when a "deficiency is due to negligence, to intentional disregard of rules and regulations, or to fraud with intent to evade tax." I.R.C. § 6161(b)(3). Section 6161(b)(3) is drafted like § 6501(c)(1), meaning nothing in § 6161(b)(3) suggests any limitation to its application when a third party intends to evade tax. Murrin argues that it is absurd to think that Congress would allow a third party to impact a taxpayer's ability to seek an extension of time, further establishing the unreasonableness of our interpretation of § 6501(c)(1).

We disagree with Murrin. Section 6161(b)(3) establishes yet another piece of evidence supporting our interpretation of § 6501(c)(1) and the Code. Sections 6161(b)(3) and 6501(c)(1) deal with the IRS's receipt of accurate payments of tax, and their provisions are not limited to a taxpayer's intent. Sections 6663(c), 6664(c)(1), and 7454(a) deal with the imposition of fraud penalties on top of what taxes might be owed, and those provisions are limited to a taxpayer's intent. Read together, Congress treats the payments of tax and the imposition of penalties differently. And it makes sense that Congress would "impose penalties on the taxpayer only when the taxpayer intended to evade the tax, while at the same time allowing the IRS to collect taxes based on an understated fraudulent return at any time." *BASR*, 795 F.3d at 1360 (Prost, C.J., dissenting); *see also Asphalt Indus., Inc. v. Comm'r*, 384 F.2d 229, 234 (3d Cir. 1967) (explaining that the fraud penalty under § 6663(a) not only gathers revenue but also operates as a "civil sanction" that "bears a close resemblance to criminal liability").

---

intent to evade tax." Murrin suggests any case involving an intent to evade tax relates to a taxpayer. But § 7454(a) is yet another example of how Congress meant what it said and said what it meant; were § 6501(c)(1) limited to a taxpayer's intent to evade tax, it could have drafted it precisely like § 7454(a) by specifying to whom the statute applies.

## C.    Precedent Likewise Supports Our View

Finally, we examine the relevant precedent.  The Supreme Court's recent analysis of Congress's use of passive voice also confirms our reading of § 6501(c)(1).  In *Bartenwerfer*, the Supreme Court analyzed a provision of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), specifying that debt is not dischargeable when money is "obtained by . . . fraud."  598 U.S. at 74.  Because Bartenwerfer did not know about the fraud committed by her partner, she argued that the judgment was dischargeable in bankruptcy.  *Id.* at 75.  Bartenwerfer reasoned that "the statute is most naturally read to bar the discharge of debts for money obtained by *the debtor's* fraud," as the passive voice of the statute "hides the relevant actor in plain sight."  *Id.*  The Supreme Court unanimously disagreed because the statute's "[p]assive voice pull[ed] the actor off the stage," meaning that all the Bankruptcy Code required was that "debt must result from someone's fraud."  *Id.* at 75–76.

Section 6501(c)(1)'s "intent to evade tax" language is like the "obtained by fraud" language at issue in *Bartenwerfer*.  Neither identifies who must intend to evade tax or who must obtain property by fraud.  But like the language in *Bartenwerfer*, § 6501(c)(1) focuses on an event without regard to an actor—that is, Congress focused on a "false or fraudulent return with the intent to evade tax" without saying who must act.  By pulling the taxpayer off the stage, Congress made its reasoning clear.  The statute of limitations does not apply when someone intends to evade tax in the filing of a false or fraudulent return, taxpayer or not.[10]

---

[10]    The Supreme Court also discussed common law fraud because while Bartenwerfer "paint[ed] a picture of liability imposed willy-nilly on hapless bystanders," common law fraud principles establish that "innocent people are sometimes held liable for fraud they did not personally commit." *Bartenwerfer*, 598 U.S. at 82–83.  Murrin argues this fact makes *Bartenwerfer* inapposite because "tax-return preparers are not agents" and, thus, common law fraud's application to this case would differ.  *Loving v. IRS*, 742 F.3d 1013, 1017 (D.C. Cir. 2014).  But even were that true, *Bartenwerfer*'s more general view that a passive-voice phrase, "on its face," "pulls

*Bartenwerfer*'s analysis about the use of passive voice in statutes also aligns with the Supreme Court's last opinion interpreting § 6501(c)(1). *See Badaracco v. Comm'r*, 464 U.S. 386 (1984). *Badaracco* concerned a dispute about whether the statute of limitations is suspended under § 6501(c)(1) if an amended non-fraudulent tax return is filed to correct a previously filed fraudulent one. *Id.* at 388. Because § 6501(c)(1) allows a tax assessment "at any time," the Supreme Court held that nothing in the statute's "unqualified language" could "be construed to suspend its operation in the light of a fraudulent filer's subsequent repentant conduct." *Id.* at 393. And the Supreme Court explained that a statute of limitations like § 6501(c)(1) "must receive a strict construction in favor of the Government." *Id.* at 391 (quoting *E.I. Dupont de Nemours & Co. v. Davis*, 264 U.S. 456, 462 (1924)).[11] The taxpayers' position in *Badaracco* was similar to Murrin's, who advocates for a position unsupported by the statute's generally applicable language—language that we must read in the IRS's favor. Thus, we see nothing in the text of § 6501(c)(1) or in case law from the Supreme Court supporting Murrin's preferred interpretation; instead, we see case law supporting the opposite conclusion.

Moving past *Badaracco* and *Bartenwerfer*, Murrin responds that we are bound to adopt her interpretation because of this Court's holding in *Asphalt Industries*, 384 F.2d at 229. But Murrin misreads *Asphalt*. The president of Asphalt embezzled money and thus caused the corporation to file false or fraudulent tax returns. *Id.* at 231. We held that the

the actor off the stage" would remain. 598 U.S. at 75. So too would our view of § 6501(c)(1).

[11] Murrin suggests that this Court does not construe statutes of limitations in the IRS's favor when the taxpayer does not act fraudulently. Opening Br. 46 (citing *Lauckner v. United States*, 68 F.3d 69 (3d Cir. 1995)). We said no such thing in *Lauckner*, and the next year interpreted § 6501 with reference to the Supreme Court's direction in *Badaracco* to strictly construe it in a light favorable to the IRS. *Bachner v. Comm'r*, 81 F.3d 1274, 1279 (3d Cir. 1996). And regardless, strict construction or not, Murrin's argument runs counter to § 6501(c)(1)'s text and context.

14

president's embezzlement was not imputed to the corporation for purposes of § 6501(c)(1) in part because the tax fraud was simply a "subordinate element in [the president's] need to conceal his embezzlement." *Id.* at 235. We did not consider whether a party other than the taxpayer could independently satisfy § 6501(c)(1). And no one argued that the president's embezzlement constituted an intent to evade tax owed by Asphalt. Instead, we assumed "for present purposes" that "the meaning of fraud" is the same under both § 6501(c)(1) and § 6663(a) and held that the record was insufficient for § 6501(c)(1) to apply. *Id.* at 232. Thus, *Asphalt* does not answer the interpretive question before the Court today.

Murrin argues that affirming the Tax Court would "reject[] 100 years of tax jurisprudence," but that is not so. Opening Br. 2. As Murrin explains, it appears that the IRS first opined that § 6501(c)(1) applies in situations other than where a taxpayer intended to evade tax in 2001. IRS Field Service Advisory 200126019, 2001 WL 729653 (issued June 29, 2001). The Tax Court then held that § 6501(c)(1) applied in situations beyond when a taxpayer intends to evade tax. *See Allen v. Comm'r*, 128 T.C. 37 (2007) (applying § 6501(c)(1) because of a tax preparer's intent to evade tax). Following *Allen*, the Tax Court has applied § 6501(c)(1) in the context of a non-taxpayer's intent on several occasions, including on returns prepared by the same tax preparer Murrin used. *See Finnegan v. Comm'r*, T.C.M. (RIA) 2016-118, at *7–9 (2016) (finding Howell's intent to evade tax rendered § 6501(c)(1) applicable); *see also Ames-Mechelke v. Comm'r*, 106 T.C.M. (CCH) 77, at *7 (2013) (finding § 6501(c)(1) applied because of a tax preparer). Our holding today therefore does not reject a century's worth of tax jurisprudence; instead, we continue the well-trod ground laid by the Tax Court.

We do acknowledge, however, that our holding today departs from the Federal Circuit's opinion that the IRS is limited "to the three-year limitations period unless the taxpayer possessed the intent to evade tax." *BASR*, 795 F.3d at 1350 (majority opinion).[12] The Federal Circuit, in a decision

---

[12] Murrin contends that the Fifth Circuit in *Payne v. Comm'r*, 224 F.3d 415 (5th Cir. 2000), came to the same view as the Federal Circuit. The Fifth Circuit, in an appeal about whether

predating *Bartenwerfer*, reached this conclusion because it found the statute's text revealed little and instead relied heavily on context, congressional intent, and legislative history. *See, e.g.*, *id.* at 1343–45. Because we find that § 6501(c)(1)'s text and statutory context include no requirement that an "intent to evade tax" must come from a taxpayer, we respectfully part ways. *Accord id.* at 1358 (Prost, C.J., dissenting) ("[T]he obvious construction of the statutory text is that the intent to evade tax must be present in a false or fraudulent return, irrespective of who possesses that intent.").

* * * * *

Murrin faces financial pain. According to the notice of deficiency, Murrin owes $65,318 in underpayments of tax and $13,064 in accuracy-related penalties. And applying the normal rate of interest to these deficiencies, she may be charged with owing an estimated $250,000 in interest.[13] All

the Tax Court properly found that a taxpayer intended to evade tax under § 6501(c)(1), described how the IRS had to show evidence "from which fraudulent intent on the part of the taxpayer can be properly inferred." *Id.* at 421 (emphasis omitted). The Fifth Circuit described the case in those terms because the actor at issue was the taxpayer. But nowhere did that court discern the meaning and scope of § 6501(c)(1) for a third party's actions.

The only other Circuit that confronted this issue aligns with our view. *City Wide Transit, Inc. v. Comm'r*, 709 F.3d 102 (2d Cir. 2013). The Second Circuit, citing the Tax Court's post-*Allen* precedent, stated: "we conclude that the limitations period for assessing [the taxpayer's] taxes is extended if the taxes were understated due to fraud of the preparer." *Id.* at 107. But the Second Circuit then explained how the issue before it was a "narrow" one because the taxpayer conceded that if the tax preparer filed taxes with an intent to evade, § 6501(c)(1) applied. As a result, while *City Wide Transit* appears to bolster our view, we are uncertain whether the Second Circuit's statement concerning § 6501(c)(1) is cabined to the taxpayers' concessions on appeal and, thus, do not rely on it.

[13] We emphasize that Murrin's accuracy-related penalties and interest on the deficiencies are not before us. Murrin stipulated

16

date to tax returns from decades ago. Murrin finds this patently unfair because her tax preparer caused the underpayments of tax. We understand her perspective. But we are bound to "consider . . . whether the policy [Murrin] favor[s] is that which Congress effectuated by its enactment of § 6501." *Badaracco*, 464 U.S. at 398. And while Congress has limited imposing fraud penalties against a taxpayer without a taxpayer's intent, § 6501(c)(1)'s text, context, and precedent establish that Congress was agnostic about whether the taxpayer intended to evade tax for purposes of the IRS's full and accurate assessment of taxes.

## IV.    CONCLUSION

For the reasons discussed above, we will affirm the judgment of the Tax Court.

---

to the IRS's proper determination of the accuracy-related penalties. Because the Tax Court lacked jurisdiction to adjudicate issues relating to interest imposed on underpayments by § 6601(a), so do we. *See Comm'r v. McCoy*, 484 U.S. 3, 6–7 (1987); *Sunoco Inc. v. Comm'r*, 663 F.3d 181, 189 (3d Cir. 2011). And in the normal course, even where the statute-of-limitations exception in § 6501(c)(1) applies, taxpayers are free to challenge accuracy-related penalties and interest. *See, e.g.*, I.R.C. § 6664(c)(1) (rendering the accuracy-related penalty and fraud penalty inapplicable when the taxpayer had a "reasonable cause" for the tax position and "acted in good faith"). Thus, nothing in this opinion should be read to foreclose any challenge to the assessment of interest in a future proceeding.